

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2006

# USA v. Williams

Precedential or Non-Precedential: Precedential

Docket No. 05-3772

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Williams" (2006). 2006 Decisions. Paper 511.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/511

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-3772

———————

UNITED STATES OF AMERICA

v.

RICHARD WILLIAMS,
a/k/a Malik Nash Bey

Richard Williams,

        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 03-00664)
District Judge: The Honorable Dennis M. Cavanaugh

Submitted under Third Circuit LAR 34.1(a)
July 10, 2006
Before: SMITH, ALDISERT and ROTH, Circuit Judges.

(Filed August 18, 2006 )

_____

## OPINION OF THE COURT

_____

Richard Coughlin
  Federal Public Defender
Peter M. Carter
  Assistant Public Defender
Candace Hom
  Research & Writing Attorney
Office of Federal Public Defender
972 Broad Street, Fourth Floor
Newark, NJ 07102

  *Counsel for Appellant Richard Williams*

Christopher J. Christie
  United States Attorney
George Leone
  Chief, Appeals Division
Mark E. Coyne
   Assistant United States Attorney
Office of United States Attorney
970 Broad Street
Newark, NJ 07102

  *Counsel for Appellee United States of America*

ALDISERT, <u>Circuit Judge</u>,

This appeal requires us to consider the admissibility of what is known as "reverse Rule 404(b)" evidence. *See* Rule 404(b), Federal Rules of Evidence. Defendant Richard Williams was convicted of possession of a firearm by a felon (18 U.S.C. § 922(g)(1)) after police discovered a semi-automatic handgun in the bedroom in which he was apprehended. At trial, Williams sought to introduce evidence that another individual with whom he was arrested, Andre Urlin, had previously been convicted of possessing a firearm. The evidence was offered to show that the weapon found in the bedroom belonged to Urlin rather than Williams. The District Court excluded the evidence. On appeal, Williams contends that the District Court erred and that, pursuant to our holding in *United States v. Stevens*, 935 F.2d 1380 (3d Cir. 1991), evidence of crimes or bad acts committed by persons other than the defendant ("reverse Rule 404(b) evidence") is admissible so long as its probative value is not substantially outweighed by the risk of unfair prejudice, undue delay or confusion of the issues.

As explained herein, Williams misreads *Stevens*, and we write to clarify that Rule 404(b)'s proscription against propensity evidence applies regardless of by whom, and against whom, it is offered. Under *Stevens*, we grant defendants more leeway in introducing "bad acts" evidence under one of the Rule 404(b) exceptions—requiring only that its probative value is not substantially outweighed by Rule 403 considerations such as unfair prejudice, undue delay or confusion of the issues. But *Stevens* did not afford defendants more leeway in admitting propensity evidence in violation of the prohibition of Rule 404(b). Because the only purpose for which Williams sought

3

to introduce Urlin's prior conviction was to show that he has a propensity to carry firearms, the District Court correctly excluded the evidence. Accordingly, we will affirm Williams' conviction. We will also reject his reasonableness challenge to his sentence.

I.

On May 16, 2003, detectives from the East Orange Police Department responded to a report of drug activity at 12 Birchwood Avenue. After arriving at the scene, the detectives surveilled the house from unmarked police cars. While they were watching the house, the detectives saw a silver Audi sedan pull into the driveway of the house. Williams and another man, Leon Clark, exited the vehicle. A third man, Andre Urlin, was waiting in the driveway for them. After Williams and Clark exited the car, Urlin got in the driver's side of the car and parked it in the garage at the back of the house.

Suspecting (correctly) that the car was stolen, one of the detectives drove past the house to confirm the address and then radioed his back-up to detain Urlin, Williams and Clark. Once the detectives converged on the scene, Williams fled up the driveway and into the house. As he fled, one of the detectives observed that he was clutching a "machine-pistol type weapon" against his chest. The detective cried out "Gun!" and chased Williams into the house.

The detective chased Williams through the first floor of the house, losing sight of him only as he turned the corners. He and another detective finally cornered Williams in a bedroom,

4

where he was crouching over a bed with his back to the door. They apprehended, searched and handcuffed him. Finding no weapon, one of the detectives began searching the bedroom. She found a gun—a semi-automatic Cobray-Leinard, Model PM-11, nine-millimeter handgun loaded with a clip containing two hollow-point bullets and 18 "full metal jacket" bullets—hidden between the mattress and the box-spring of the bed over which Williams had been found crouching. The weapon had a long shoelace tied to it, serving as a strap. A consensual search of the house subsequently revealed 27 glassine envelopes of heroin, $2,455 in cash and a second stolen Audi. Two other individuals were also found in the home.

Williams, Urlin and Clark were arrested. A criminal history check revealed that Williams had several prior convictions, including a felony conviction for aggravated assault. Williams was subsequently turned over to the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Prior to trial, Williams filed a motion *in limine* for admission of "reverse [Rule] 404(b)" evidence that Urlin had recently been convicted for possession of a firearm by a felon. Williams contended that this evidence was admissible to show that Urlin, rather than Williams, had possessed the weapon in question. The District Court delayed a ruling on the question until the close of evidence, at which time it denied the motion without explanation. The jury returned a verdict of guilty.

The Presentence Investigation Report, to which Williams

5

did not object, stated that Williams' Guidelines range was 51 to 63 months' imprisonment, based on a total offense level of 20 and a criminal history category of IV.[1] At his July 27, 2005 sentencing, Williams requested a 41-month sentence, ten months below the applicable Guidelines range. He asserted that he had a troubled childhood and a history of alcohol and marijuana abuse, and that he was denied rehabilitative opportunities while incarcerated in New Jersey. The government opposed the request, noting that Williams was convicted of possessing a very powerful weapon loaded with hollow-point bullets and that he had an "abysmal criminal history." It requested a 63-month sentence.

The District Court agreed with the government that Williams' offense was very serious and that his criminal record was "terrible." It also considered and rejected Williams' contention that his upbringing warranted a lesser sentence. It sentenced Williams to 63 months' imprisonment and three years' supervised release. The judgment of conviction and sentence was entered on August 1, 2005, and Williams filed a timely notice of appeal.

## II.

The District Court had subject matter jurisdiction

---

[1] In addition to his felony conviction for aggravated assault, for which he served six years in prison, Williams had prior convictions for joyriding and receipt of stolen property. He was also a suspected member of the Bloods street gang.

6

pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction over Williams' claims of error at trial under 28 U.S.C. § 1291. Although the government contests our jurisdiction to review Williams' sentence for reasonableness, this Court held that we have jurisdiction to review sentences for reasonableness under 18 U.S.C. § 3742(a)(1). *See United States v. Cooper*, 437 F.3d 324, 327 (3d Cir. 2006); *but see Cooper*, 437 F.3d at 333 (Aldisert, J. concurring and dissenting).

We review the District Court's evidentiary rulings for abuse of discretion. *United States v. Versaint*, 849 F.2d 827, 831 (3d Cir. 1988). Under the abuse of discretion standard, an evidentiary ruling is to be reversed only if arbitrary or irrational. *United States v. Universal Rehab. Servs.*, 205 F.3d 657, 665 (3d Cir. 2000).

III.

A.

At the center of this case is this Court's decision in *United States v. Stevens*, our seminal case addressing the admissibility of what is known as "reverse Rule 404(b)" evidence. "In contrast to ordinary 'other crimes' evidence [under Rule 404(b)], which is used to incriminate criminal defendants, 'reverse [Rule] 404(b)' evidence is utilized to exonerate defendants." *Stevens*, 935 F.2d at 1402.[2] Such

---

[2] Federal Rule of Evidence 404(b) provides, in relevant part:

7

evidence is most commonly introduced by a defendant to show that someone else committed a similar crime or series of crimes, implying that he or she also must have committed the crime in question. *See* 2 Wigmore on Evidence § 304, at 252 (J. Chadbourn rev. ed. 1979).

In *Stevens*, we held that the district court erred in excluding reverse Rule 404(b) evidence of a similar robbery involving a victim who failed to identify the defendant as the assailant. 935 F.2d at 1405. The evidence was offered to show that the same person committed both robberies and that because the defendant was not identified as the perpetrator of the first robbery, he was not the perpetrator of the second. *Id.* at 1401. Although one of the robberies involved a sexual assault and the other did not, both crimes: (1) took place within a few hundred yards of one another; (2) were armed robberies; (3) involved a handgun; (4) occurred between 9:30 p.m. and 10:30 p.m.; (5) were perpetrated on military personnel; and (6) involved a black assailant who was described similarly by his victims. *Id.* The two robberies also occurred within days of one another, and the fruits of both robberies were discovered in similar locations. *Id.*

--------

Other Crimes, Wrongs, or Acts. – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

8

At issue in *Stevens* was what degree of similarity should be required when a defendant offers evidence of bad acts committed by a third party. The government argued that the same standard of similarity should apply regardless of who offers the evidence, and that the two robberies did not satisfy the high standard that would apply if it sought to introduce evidence of bad acts by a defendant. *Id.* at 1404; *see, e.g., Carter v. Hewitt*, 617 F.2d 961, 968 (3d Cir. 1980) (observing that the degree of similarity required to prove "identity" is extremely high when the government seeks to introduce a defendant's bad acts). Specifically, it contended that the defendant must show that there has been more than one similar crime or that the other crime was sufficiently similar to be called a "signature" crime. *Stevens*, 935 F.2d at 1404. We disagreed, concluding that Rule 404(b) was primarily intended to protect defendants and that "a lower standard of similarity should govern 'reverse Rule 404(b)' evidence because prejudice to the defendant is not a factor." *Id.* Recasting our conclusion in terms of the Federal Rules of Evidence, we stated that "a defendant may introduce 'reverse 404(b)' evidence so long as its probative value under Rule 401 is not substantially outweighed by Rule 403 considerations." *Id.* at 1405.[3]

---

[3] Rule 401 of the Federal Rules of Evidence provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

9

Williams reads this language in *Stevens* to mean that evidence of bad acts involving someone other than the defendant is admissible whenever its probative value is not substantially outweighed by Rule 403 considerations, regardless of the purpose for which it is admitted: propensity, identity, motive or otherwise. Williams' defense in this case is that Urlin possessed the gun, not him. He argues that Urlin's prior conviction "rationally tends to disprove his [own] guilt"—the import of the conviction being that Urlin has a propensity to possess firearms and that, therefore, the gun recovered from under the mattress was likely Urlin's.[4]

---

more probable or less probable than it would be without the evidence.

Rule 403 of the Federal Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[4] Although Williams carefully avoids labeling Urlin's prior conviction "propensity evidence," he nonetheless maintains that *Stevens* rejected "hard and fast" preconditions to the admissibility of reverse Rule 404(b) evidence and that the purpose for which the evidence is offered is irrelevant.

Williams misreads *Stevens*. This Court has never held that Rule 404(b)'s prohibition against propensity evidence is inapplicable where the evidence is offered by the defendant. In *Stevens*, it was indisputable that the evidence was being offered to show identity, i.e., that the perpetrator of the second robbery was the same as the perpetrator of the first because of the similarity of the crimes. Rule 404(b) expressly permits such evidence of other similar crimes to prove identity. *See* Rule 404(b), Federal Rules of Evidence (bad acts evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake") (emphasis added); *see, e.g., United States v. Powers,* 978 F.2d 354, 361 (7th Cir. 1992) (holding that other bank robberies and attempted robbery of which defendant had been convicted were sufficiently similar to the charged offense to render identity evidence admissible). The evidence was not being used to show that the perpetrator of the first robbery committed the second robbery simply because he had a general propensity to commit robberies.

It was implicit in *Stevens* that we do not begin to balance the evidence's probative value under Rule 401 against Rule 403 considerations unless the evidence is offered under one of the Rule 404(b) exceptions. That the prohibition against propensity evidence applies regardless of by whom—and against whom—it is offered is evident from Rule 404(b)'s plain language, which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of *a person* in order to show action in conformity therewith." Rule 404(b), Federal Rules of Evidence (emphasis added). Rather than restricting itself to barring evidence that tends to prove "the

11

character of the accused" to show conformity therewith, Rule 404(b) bars evidence that tends to prove the character of any *"person"* to show conformity therewith. Although, under *Stevens*, a defendant is allowed more leeway in introducing *non-propensity evidence* under Rule 404(b), he or she is not allowed more leeway in admitting *propensity evidence* in violation of Rule 404(b). *United States v. McCourt*, 925 F.2d 1229, 1234 n.8 (9th Cir. 1991) (explaining language from *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984), that is virtually identical to that used in *Stevens*). We therefore reject Williams' argument, and affirm that the prohibition against the introduction of bad acts evidence to show propensity applies regardless of whether the evidence is offered against the defendant or a third party.[5]  *See United*

---

[5] We acknowledge that there might be cases in which an application of Rule 404(b)'s prohibition against propensity evidence arguably encroaches on a defendant's right to present a full defense. *See Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (holding that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense") (internal quotation marks and citations omitted). The Advisory Committee Notes following Rule 401 explain that rules such as Rule 404 and those that follow are meant to prohibit certain types of evidence that are otherwise clearly "relevant evidence," but that nevertheless create more prejudice and confusion than is justified by their probative value. This, however, is a sweeping and non-individualized judgment, and the drafters have provided exceptions to this general rule for certain types of crimes. *See* Rules 413, 414 & 415, Federal Rules of Evidence

12

*States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004) ("[W]e affirm that prior bad acts are generally not considered proof of *any person's* likelihood to commit bad acts in the future and that such evidence should demonstrate something more than propensity.") (emphasis added); *McCourt*, 925 F.2d at 1235 ("Evidence of 'other crimes, wrongs, or acts,' no matter by whom offered, is not admissible for the purpose of providing propensity or conforming conduct, although it may be admissible if offered for some other relevant purpose."); *United States v. White*, 136 Fed. Appx. 540, 541 n.2 (3d Cir. 2005)

---

(providing that evidence of the defendant's commission of an offense of sexual assault or child molestation is admissible for any purpose). Under exceptional circumstances, therefore, it could plausibly be argued that a defendant has a constitutional right to present propensity evidence otherwise barred by Rule 404(b). *See Holmes v. South Carolina*, 126 S. Ct. 1727, 1731-1733 (2006) (observing that "[s]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials" and that rules restricting the ability of a defendant to offer evidence that another person committed a crime are "widely accepted," but that evidence rules that significantly infringe upon the interest of the accused and are disproportionate to the purposes they are designed to serve are impermissible). But we need not reach this question here; the evidence of Urlin's prior conviction—even if used to show propensity—has minimal probative value. Indeed, even if we adopted Williams' reading of *Stevens*, we would nonetheless hold that the District Court did not exceed the permissible bounds of its discretion in excluding the evidence.

13

(unpublished) ("[A]s opposed to Rule 404(a), which relates to character evidence of an accused, witness or victim, Rule 404(b) applies to other acts evidence regarding a 'person.'") (citing *Lucas*, 357 F.3d at 605); *cf. United States v. Sturm*, 671 F.2d 749, 751 (3d Cir. 1982) (affirming exclusion under Rule 404(b) of evidence that witness had been involved in a prior arson-extortion scheme).

### B.

Perhaps anticipating our conclusion that Urlin's prior conviction was not admissible to show that he had a propensity to possess weapons, Williams argues in the alternative that Urlin's prior conviction was admissible to prove opportunity and identity, which are among the several purposes for which such testimony *can* be introduced under Rule 404(b).  *See* Rule 404(b), Federal Rules of Evidence.  This argument is not convincing.  First, we fail to see how the prior conviction could supply Urlin with the "opportunity" to commit the crime for which Williams is charged.  There was no evidence that Urlin's prior conviction involved the same gun, or even the same type of gun (which might imply that he had continued access to the type of gun in question).

Second, although a prior conviction need not rise to level of a "signature crime" to justify admission under Rule 404(b)'s identity exception, *see Stevens*, 935 F.2d at 1405, Urlin's prior conviction is simply too generic to prove identity.  As in *Stevens*, we balance the probative value of the evidence under Rule 401 against the countervailing Rule 403 considerations to determine whether the prior bad act is admissible to prove the

14

identity of the perpetrator. Looking first at Rule 401, the evidence of Urlin's prior conviction is not probative of the identity of the handgun's owner. There is no evidence that Urlin was arrested with the same model or in the same location, or that the two crimes share any facts in common other than that they both involved a gun. The mere prior possession of a firearm, without more, is not by any means a distinctive act, and does not prove identity.[6] *See United States v. Spencer*, 1 F.3d 742, 745 (9th Cir. 1992) ("[I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise.") (quoting *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991)). Moreover, even assuming that the information had some minimal probative value, it would be substantially outweighed by the risk of unfair prejudice and confusion of the issues. *See Lucas*, 357 F.3d at 606 & n.2 (observing that unfair prejudice is viewed not only from the defendant's perspective) (citing Rule 403, Federal Rules of Evidence, Advisory Committee Notes ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.")).

_____

[6] According to a report commissioned by the United States Department of Justice, National Institute of Justice, in 1994, 44 million Americans owned 192 million firearms, 65 million of which were handguns. *See* P.J. Cook & J. Ludwig, *Guns in America: Results of a Comprehensive National Survey on Firearms Ownership and Use* (1997), *at* http://www.ncjrs.gov/pdffiles/165476.pdf.

Ultimately, Urlin's prior conviction was only probative inasmuch as it showed that he had a propensity to carry a weapon—the purpose proscribed by Rule 404(b). Williams' protestations to the contrary are not persuasive. As we stated in *United States v. Morley*, 199 F.3d 129 (3d Cir. 1999), "a proponent's incantation of the proper uses of such evidence under the rule does not magically transform inadmissible evidence into admissible evidence." *Id.* at 133. He or she "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *Id.* (quoting *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994)). Williams has not done that here. We therefore conclude that the District Court did not err in excluding evidence of Urlin's conviction, as it was not admissible to show propensity and was not probative of identity or opportunity. *See Lucas*, 357 F.3d at 606 (holding that companion's prior conviction for possessing and selling cocaine was not admissible to show that defendant did not possess the cocaine in question because it showed propensity and was not probative of knowledge or intent); *Spencer*, 1 F.3d at 745 (holding that companion's prior bad act of "[h]iding a gun under a car seat is not a distinctive crime, and cannot be used to satisfy the 'identity' exception to Rule 404(b)").

IV.

Williams also challenges the reasonableness of his sentence. The District Court explained Williams' sentence as follows:

16

The Court has considered the appropriate sentence and the factors as set forth in 18 U.S.C. § 3553; and, of course, the guidelines now, since the Supreme Court's recent decisions, are advisory as opposed to mandatory, but the Court must, of course, consider those guidelines, and I have, and I will use the guidelines.

Mr. Williams was convicted after a trial. I sat and heard the evidence, and there is no question in my mind that the jury was correct in their findings. The evidence in my view was overwhelming that Mr. Williams was, in fact, at the location with the group of people that were there and he did, in fact, have in his possession the weapon.

And as I recall, it was an automatic weapon . . . [w]ith hollowpoint bullets. . . . *We just recently saw the tragedy of a young police officer that was killed here in Newark because someone felt it appropriate to have a weapon. For the life of me, I don't understand this whole routine with the weapons, but I have absolutely no patience for anybody that feels that they're going to carry weapons and use them in the city against innocent people or, worse yet, law enforcement.*

This gentleman has a terrible record. I did look at the arguments made by Mr. Carter with respect to the unfortunate upbringing, perhaps, that he went through; and, while that is unfortunate, there are

17

many young men and women who go through similar situations and don't resort to the type of life that Mr. Williams apparently has chosen to resort.

* * *

This case is a total offense level of 20 with a criminal history category of IV, which would call for a guideline range of between 51 and 63 months, no eligibility for probation, a supervised release range of two or three years, and a fine of $7,500 to $75,000. . . . So with all those things considered, pursuant to the Sentencing Reform Act of 1984, it's the judgment of this Court that the Defendant, Richard Williams, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 63 months.

App. at 16-17 (emphasis added).

Williams argues that because his conviction involved neither gun violence toward innocent bystanders nor the death of a police officer, recent news reports and the judge's personal feelings toward gun violence were irrelevant to his sentencing and were not proper considerations under 18 U.S.C. § 3553(a). He contends that the District Court's consideration of extraneous factors resulted in an unreasonable sentence under *United States v. Booker*, 543 U.S. 220, 261 (2005) (holding that

18

we review federal criminal sentences for reasonableness).[7]

We can discern no error in the judge's references to a recent shooting and the evils of gun violence in general. Gun violence is a serious problem in the United States, and the possession by a convicted felon of a nine-millimeter handgun loaded with hollow-point and "full metal jacket" bullets is certainly related to other instances of gun violence, regardless of whether Williams himself used or intended to use the weapon against a person. Read in context, the judge's comments were designed to explain "the seriousness of the offense," 18 U.S.C. § 3553(a)(2)(A), and to illustrate the need "to afford adequate deterrence to criminal conduct" involving firearms, 18 U.S.C. 3553(a)(2)(B). We fail to apprehend how this consideration resulted in an unreasonable sentence.

Moreover, even assuming that the judge's comment evinced some personal disdain for gun-related crimes, this also would not make Williams' sentence unreasonable. Although the Sentencing Guidelines were designed to limit judicial

---

[7] Williams does not contend that the District Court failed to sufficiently address his arguments that he has a history of drug and alcohol abuse and that he was not afforded sufficient rehabilitative opportunities while incarcerated in New Jersey. *See Cooper*, 437 F.3d at 329 (holding that the record must indicate that the sentencing court gave meaningful consideration to the § 3553(a) factors and that it addressed all arguments raised by the parties that rest upon "a ground of recognized legal merit").

19

discretion in sentencing to ensure more uniform sentences, it did not eradicate all judicial discretion. Unless a judge employs a personal sentencing policy or practice rather than individually considering the facts of each case, *see United States v. King*, 53 F.3d 589, 591 (3d Cir. 1995) ("The sentencing jurisprudence . . . disapproves of sentencing 'practices' in favor of case-by-case consideration."); *United States v. Thompson*, 483 F.2d 527 (3d Cir. 1973), a judge may be less lenient towards certain types of crimes without violating the Constitution or the dictates of reasonableness. We will therefore affirm Williams' sentence.

IV.

Our decision today should not be read to narrow or restrict the scope of our holding in *Stevens*. Although some courts have read *Stevens* to hold that we apply a straightforward balancing test anytime a defendant offers evidence that another person committed the crime, even to show propensity, *see, e.g., Lucas*, 357 F.3d at 605 (majority opinion) & 610 (Rosen, J. dissenting and arguing for adoption of *Stevens* test), *Stevens* did not even discuss propensity evidence. And it certainly did not create an exception to Rule 404(b)'s plain proscription against "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of *a person* in order to show action in conformity therewith." Rather, *Stevens* held that when a defendant offers evidence of prior bad acts by a third party to prove identity or opportunity—or for one of the other permissible purposes under Rule 404(b)—we apply a much less stringent test of similarity than we do when the government offers such evidence against a defendant. But we only reach this test if the evidence is being admitted under one of the Rule 404(b) exceptions. The

20

evidence does not pass muster under the *Stevens* balancing test if, as here, it is solely probative of a third party's propensity to commit similar crimes.  For the foregoing reasons, we will affirm the judgment of the District Court.

_____