NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3692
_____

UNITED STATES OF AMERICA

v.

ROBERT P. MERZ,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 07-cr-00199-1
(Honorable Juan R. Sanchez)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 16, 2010
Before:  SCIRICA, RENDELL and FISHER, *Circuit Judges*.

(Filed: October 12, 2010 )
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Defendant Robert Merz was convicted of advertising,[1] possessing,[2] receiving,[3] and

---

[1] In violation of 18 U.S.C.§ 2251(d)(1)(A).
[2] In violation of 18 U.S.C. § 2252(a)(4)(B).
[3] In violation of 18 U.S.C. § 2252(a)(2).

transporting[4] child pornography and was sentenced to life imprisonment.  On appeal,

Merz challenges the District Court's determinations, including whether:  1) the

government could make derivative use of his statements during a proffer session; 2) the

Magistrate Judge properly granted a search warrant based on an affidavit of probable

cause; 3) evidence of his prior convictions for child molestation was admissible; and 4)

the cumulative prejudicial effect of various pieces of evidence did not deprive him of a

fair trial.  We will affirm.

I.

In July 2006, Special Agent Luders of the FBI began investigating "Ranchi," an

internet message board used to post child pornography and related text.[5]  After

downloading several videos and images of children engaged in sexual acts from the site,

Luders posted two files,[6] along with text that purported to be a description of the files,

stating the files contained graphic child pornography.  When users attempted to download

the files, Luders's computer captured their internet protocal ("IP") addresses.  After

serving Comcast with a subpoena, federal agents were able to trace one of the IP

addresses, from which a user attempted to download the files within hours of their being

---

[4] In violation of 18 U.S.C. § 2252(a)(1).
[5] The Frequently Asked Question section of the board states that the purpose of the board was to exchange child porn and contained information on how to evade detection by law enforcement.
[6] The files were posted on October 25, 2006.

posted by Luders.[7] The IP address was registered to a Comcast account at the address of the defendant, where he resided with his father. On February 23, 2007, Special Agent Pamela Kirschner of the FBI's Philadelphia division of the Cyber Crime Squad submitted an affidavit of probable cause to a magistrate judge in the Eastern District of Pennsylvania. The affidavit stated Kirschner had experience investigating online crimes against children, provided general information about online exchange of child pornography, explained the common characteristics among child porn collectors—including their tendency to retain their materials for long periods of time—and listed how Luders's investigation resulted in obtaining the IP address associated with Merz's residence. Based on the affidavit, the Magistrate Judge issued a search warrant for the Merz's residence.

Authorities then searched Merz's home, during which they seized Merz's computer and 106 DVDs. During the search, Robert Merz stated that "it's me you want to arrest" and that his father was "not involved."

On March 14, 2007, Merz engaged in a proffer session with the Government. The proffer letter states the Government could not make direct use of information provided during the proffer session but that they could make derivative use of such information. The proffer letter states it "does not constitute a plea agreement or cooperation agreement, nor is it a precursor to, or part of, such an agreement."

---

[7] The user at the IP address assigned to Merz's residence tried to access the file on October 25, 2006.

At the proffer session, Merz also signed a consent form, which allowed the Government to use his password to the message board known as "My Kingdom Forum" and assume his identity. During the session, Merz further agreed to a sixty day extension of the time required for the Government to seek an indictment under the Speedy Trial Act, 18 U.S.C. § 3161.

A forensic examination of Merz's computer uncovered evidence that Merz's computer was used to access the webpage "My Kingdom Forum" under the username "Peach." The "My Kingdom Forum" was primarily a place to post and trade child pornography. The "My Kingdom Forum's" administrators were a user named "Peach" and a user named "Totoro," with "Peach" as the primary administrator. "Peach" mentioned in a post that he had been twice convicted of child molestation and served fifteen-and-a-half years in state prison.

The investigation also uncovered that "Peach" sent a video of a young girl to a user named "Burn." "Burn" was identified as Jonathan Hiner. "Peach" had told Hiner to find Robert Merz on Skype, an internet phone service. Robert Merz's Skype account used the same email address "Peach" had used to email Hiner. "Peach" had an instant messenger conversation with Hiner, where "Peach" revealed details about his personal life, which were consistent with the life of Robert Merz, including details about his family, occupation, and two prior child molestation convictions.

The Government failed to file an indictment or motion for extension of time by April 5, 2007, the deadline under the Speedy Trial Act. On April 10, 2007, the

Government filed a motion for extension, which Merz opposed. The Government, on April 11, 2007, successfully attempted to dismiss the amended complaint without prejudice, which Merz also opposed, as he requested it be dismissed with prejudice. On April 12, 2007, the Grand Jury returned an indictment against Merz for receipt and possession of child pornography. On August 1, 2007, Merz withdrew permission for the Government to use his online identity. Subsequently, the grand jury returned two superseding indictments that added charges of advertising child pornography and transportation child pornography partially based on information derived from statements during Merz's proffer session.

Before trial, the District Court denied Merz's motions to exclude evidence obtained from the search of his home and evidence derived from his proffer statement. The District Court did exclude evidence of statements made during the proffer session. The District Court also granted the Government's motion to admit evidence of Merz's prior child molestation convictions. Following trial, a jury convicted Merz on all counts and he was sentenced to life in prison.

II.

First, Merz argues that the District Court erred in admitting evidence derived from his statements during the proffer session. The proffer letter, sent to Merz's counsel, states:

> [T]he government may make derivative use of, and may pursue investigative leads suggested by, statements made or information provided by you or your client. That is:

> [a] your client waves any right to challenge such derivative use and agrees that such use is proper; and
>
> [b] your client agrees that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not govern such derivative use.
>
> This provision eliminates the necessity of a <u>Kastigar</u> hearing at which the government would have to prove that its evidence at trial or other legal proceeding is untainted by statements made or information provided during the "off-the-record" proffer.

Merz argues, even though the Government's proffer letter reserved the right to make derivative use of his proffer statement, the Government's lack of good faith required the evidence derived from his proffer session be excluded.[8]

Other Circuits have held that, because proffer agreements are interpreted in light of contract law principles, a provision allowing for derivative use is valid so long as the proffer letter clearly reserves the right to use derivative information. *See United States v. Pielago*, 135 F.3d 703, 710-711 (11th Cir. 1998) (holding derivative use of proffer statement to identify co-conspirator that testified against the defendant did not prejudice defendant); *United States v. Chiu*, 109 F.3d 624, 625-26 (9th Cir. 1997) (allowing proffer statements to be used to prepare witnesses for trial). Like these courts, we decline to find that prosecutors violated a duty of good faith, if one applied, by adhering to the terms of the proffer letter. As the Government did not violate the terms of the agreement with

---

[8] Whether the Government breached an agreement with the defendant is a question of law subject to plenary review. *See United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008) (reviewing breach of plea agreement under plenary standard).

Merz, there is no basis to exclude the evidence. *Cf. United States v. Issac*, 141 F.3d 477, 482 (3d Cir. 1998) ("In the absence of a plea agreement, review is allowed only for an unconstitutional motivation.").

Second, Merz argues that the affidavit submitted by Special Agent Kirschner contained insufficient information to establish probable cause and such information had, furthermore, become stale by the time the FBI sought a search warrant.[9] As the Fourth Amendment protects against unreasonable government intrusion into the home and expresses a preference for searches conducted pursuant to a warrant, a magistrate judge must, in the usual course, "determine that there is 'a fair probability that . . . evidence of a crime will be found in a particular place." *United States v. Zimmerman*, 277 F.3d 426, 431-32 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983))(alteration in original).

Recently, in *United States v. Vosburgh*, 602 F.3d 512 (3d Cir. 2010), we considered the sufficiency of an affidavit and resultant warrant from the Ranchi investigation conducted by Special Agent Luders. In *Vosburgh*, we found a similar affidavit containing the IP address, from which someone attempted to download purported child pornography through the link posted by Luders, provided a "fair probability" that evidence of a crime would be discovered in the home connected to the IP address. *Id.* at 526-27. Furthermore, we found that the exact same period between the

---

[9] "We exercise plenary review of the District Court's denial of a motion to suppress." *United States v. Vosburgh*, 602 F.3d 512, 526 (3rd Cir. 2010) (citation omitted).

attempted downloading and the submission of the affidavit did not make the information stale, because child pornography collectors tend to retain material for a significant amount of time, as it is difficult to obtain. *Id.* at 528. Because Merz's arguments are nearly identical to those presented to us in *Vosburgh*, we reject them.

Third, Merz argues the District Court erred in allowing evidence of his two prior convictions for child molestation[10] to be presented to the jury. Merz's argument is that the prior convictions are not sufficiently similar to the crimes charged to give them probative value.[11]

The District Court did not abuse its discretion in admitting Merz's prior crimes. Federal Rule of Evidence 414's relevant provisions state:

> (a) In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
> . . .
> (d) For purposes of this rule and Rule 415, "child" means a person below the age of fourteen, and "offense of child molestation" means a crime under Federal law or the law of a State (as defined in section 513 of title 18, United States Code) that involved—
> > . . .

---

[10]These convictions were a 1987 conviction for involuntary deviate sexual intercourse and corruption of a minor for molesting a ten-year-old girl and a 1993 conviction for aggravated indecent assault and corruption of a minor for molesting a nine-year-old girl.
[11] We review the District Court's evidentiary rulings for abuse of discretion. *United States v. Williams*, 458 F.3d 312, 315 (3d Cir. 2006) (citations omitted). Under the abuse of discretion standard, an evidentiary ruling is to be reversed only if arbitrary or irrational. *Id.*

(2) any conduct proscribed by chapter 110 of title 18, United States Code;
(3) contact between any part of the defendant's body or an object and the genitals or anus of a child;
(4) contact between the genitals or anus of the defendant and any part of the body of a child . . . .

Fed. R. Evid. 414. The charged offenses were proscribed by "chapter 110 of title 18, United States Code" qualifying this as "a criminal case in which the defendant is accused of an offense of child molestation." Fed. R. Evid. 414. Similarly, Merz's prior convictions were for child molestation. Accordingly, Rule 414 allows such evidence to be admitted and it can be used to show propensity toward committing such offenses.

As we recognized in *Johnson v. Elk Lake School District*, 283 F.3d 138 (3d Cir. 2002), such evidence can be excluded under Rule 403, which allows for evidence to "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. If the prior offenses are "demonstrated with specificity" and are "sufficiently similar to the type of sexual assault allegedly committed by the defendant," *Johnson*, 283 F.3d at 156, Rule 414 provides a presumption in favor of their admission.

However, even if Merz is correct in arguing the prior convictions do not have a presumption of admissibility under *Johnson*, it was not an abuse of discretion for the District Court to admit such evidence. In order to determine the probative value of propensity evidence admitted under Federal Rules of Evidence 414 in light of Rule 403's

9

balancing test, we have adopted a non-exclusive list of factors.  Relevant factors in the Rule 403 balancing analysis are "the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim."  *Johnson*, 283 F.3d at 156 (citing *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998)).

While the similarity of the prior offenses may not entitle them to a presumption of admissibility, they do support a sufficient propensity inference.  The prior offenses involved children of the same age as children in the pornography at issue here. Additionally, even though the conviction for Merz's last prior offense was approximately thirteen years before the conduct charged here, he spent much of the intervening time incarcerated.  Even if these similarities do not justify a presumption of admissibility, they do permit a proper inference of propensity.

The prior convictions also provide probative value beyond the propensity inference.  The identity of a user of the "My Kingdom Forum" who trafficked in child pornography under the name "Peach" was at issue.  As "Peach" had stated that he had been twice convicted of child molestation and spent over fifteen years in prison, Merz's two prior convictions related to identifying him as "Peach."  In addition, it was probative of the fact Merz knowingly traded in child pornography, as his statements—advising caution as he had experienced prison—showed he was aware that the message board was used for the illegal posting of child pornography.   Accordingly, the evidence of Merz's

10

prior convictions had a high probative value, even assuming the propensity evidence was not strong enough to create a presumption of admissibility.

The main factor balancing against probative value, in this case, is the "danger of unfair prejudice." Evidence of prior convictions may pose a danger that the jury may decide to convict the defendant based on prior offenses and not the crime charged. But, steps were taken to limit the danger of prejudice. The jury never learned about the facts underlying the two prior convictions. The District Court did not abuse its discretion in determining the danger of unfair prejudice did not substantially outweigh the high probative value of the evidence.

Similarly, Merz argues the jury instructions incorrectly stated he was on trial for an offense of sexual assault or child molestation and incorrectly stated the prior convictions could be considered for any purpose the jury deemed relevant. Such instructions were not in error, as Rule 414 makes clear that "any conduct proscribed by chapter 110 of title 18, United States Code," which includes the charges against Merz, is considered child molestation under the Rule. Additionally, Rule 414(a) states that such prior offenses "may be considered for its bearing on any matter to which it is relevant." Accordingly, the jury instructions were a permissible statement of the law.

Merz's last argument is that the District Court erred by allowing the government to introduce evidence about the total volume of child pornography, evidence about how he obtained and stored the child pornography, and evidence disclosing "Peach's" statements from forum postings and an instant messenger conversation, in which "Peach"

11

disclosed he had two prior convictions for child molestation and was incarcerated. Additionally, the prosecution called Special Agent Steven Jamison to verify the identity and age of one of the children depicted. Jamison brought to court the underwear worn by the child in the video. Merz argues the evidence was unfairly prejudicial under Rule 403's balancing test.

We find that the District Court did not abuse its discretion in admitting the bulk of such evidence. As stated above, Rule 403 requires balancing the probative value of evidence against the danger of unfair prejudice, *inter alia*.

The District Court did not abuse its discretion in admitting evidence of the amount of child pornography. Both the amount of videos and images, along with evidence that the files were carefully cataloged, constitutes highly probative evidence that Merz's conduct was done intentionally or knowingly. *See United States v. Angle*, 234 F.3d 326, 343-44 (7th Cir. 2000) (holding evidence of uncharged child pornography was relevant to whether the defendant acted knowingly). Accordingly, it rebuts any doubt Merz mistakenly obtained the files.

As discussed, evidence of Merz's two prior conviction was admissible under Rules 403 and 414. Statements made by "Peach" about these convictions were highly probative to identify Merz as "Peach" and had little additional prejudicial effect as the convictions were admissible.

Finally, allowing the presentation of the child's underwear by Jamison likely was an abuse of discretion under Rule 403. Jamison's testimony already established the

child's identity and age and this additional evidence could have been inflammatory. Under Federal Rule of Criminal Procedure 52(a), "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  Accordingly, an error is harmless if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *United States v. Henry*, 282 F.3d 242, 251 (3d Cir. 2002) (internal citations omitted).

The government presented a wealth of evidence showing Merz was guilty of intentionally advertising, possessing, receiving, and transporting child pornography.  A large amount of such pornography was seized from his residence, testimony from other users and the admission on the message board of having two prior child molestation convictions established his identity as "Peach," and Merz made an incriminating statement during the search of his home when he said he, not his father, was responsible. Given the plethora of evidence presented to show Merz's guilt, we find that it appears beyond a reasonable doubt that this possible error did not contribute to the verdict obtained.

Merz further argues the cumulative effect of introduction of the above evidence was unfairly prejudicial.  But, if we were to aggregate the prejudicial effects, we would also have to aggregate the probative value of the evidence.  As explained, with the exception of the underwear, the high probative value of the above evidence was not substantially outweighed by any prejudicial effects.

## III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.