**[J-73-2020][M.O. – Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 9 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court dated 8/9/19 at No. 472 MDA |
| | : | 2018 affirming the judgment of sentence |
| v. | : | of the Luzerne County Court of |
| | : | Common Pleas, Criminal Division, |
| | : | dated 11/17/17 at No. CP-40-CR- |
| | : | 0001152-2017 |
| ERIC YALE, | : | |
| | : | ARGUED:  September 16, 2020 |
| Appellant | : | |


*DISSENTING OPINION*


**JUSTICE SAYLOR**                                                    **DECIDED:  April 29, 2021**


The majority holds that, in criminal cases, the general bar against the admission of propensity evidence imposed by Pennsylvania Rule of Evidence 404(b)(1) applies only to proffers by the Commonwealth.  *See* Majority Opinion, *slip op.* at 32-33. According to the majority, Rule 404(b)(1) couldn't be applied to such evidence adduced by criminal defendants in any event, because this application would violate federal constitutional norms, particularly the right of defendants to present a complete defense. *See id.* at 26-28.

In terms of the constitutional considerations, certainly defendants generally cannot be prevented from presenting a defense.  Nevertheless, this right is subject to reasonable restriction and therefore, its breadth is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the

ascertainment of guilt or innocence.'" *Chambers v. Miss.*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973)). Accordingly, an evidentiary rule is constitutionally infirm, as an undue curtailment of the right to present a defense, only "when it infringes on a weighty interest of the defendant and is arbitrary or disproportionate to the purpose it was designed to serve." *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006). In this regard, "state and federal rulemakers have broad latitude under the Constitution to establish [reasonable] rules excluding evidence from criminal trials." *U.S. v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998)

As applied to defense proffers, I fail to see how a general ban against using evidence merely to demonstrate a propensity to commit crimes or other bad acts, *see* Pa.R.E. 404(b)(1), tempered by the allowance for admission of other-bad-acts evidence for other relevant purposes, *see* Pa.R.E. 404(b)(2), is arbitrary or disproportionate to the relevant aims. Significantly, evidence of personal predisposition is most often collateral and can be "distracting, time-consuming, and likely to influence a fact finder beyond its legitimate probative value." *State v. Donald*, 316 P.3d 1081, 1089 (Wash. App. 2013) (citing *Scheffer*, 523 U.S. at 314, 118 S. Ct. at 1267).[1] Indeed, while courts in other jurisdictions differ substantially concerning the direct applicability of Rule 404(b) analogues to defense proffers, most appear to agree that other-bad-acts evidence is generally inadmissible for purposes of demonstrating only a predisposition to commit crimes or other bad acts, even where a defendant seeks to do so in an attempt to

---

[1] Although the *Scheffer* case concerned a rule prohibiting the admission of polygraph evidence rather than one about prior bad acts, concerns with avoiding collateral litigation and distraction also attend Rule 404(b). In this respect, I respectfully differ with the majority's focus on the prejudicial impact on defendants as presenting a unilateral justification for the ban against propensity evidence. *Compare* Majority Opinion, *slip op.* at 30, *with U.S. v. McCourt*, 925 F.2d 1229, 1235-36 (9th Cir. 1991) (explaining that the general prohibition against predisposition-based evidence "has roots in more than one concern").

deflect blame to a third party. *See, e.g.*, *U.S. v. Peneaux*, 81 F. Supp. 3d 764, 767 (D.S.D. 2014) (collecting cases from several federal circuit courts of appeals); *see also Donald*, 316 P.3d at 1086 (explaining that there is presently no federal judicial decision recognizing a constitutional right to admit propensity evidence). For these reasons, I respectfully disagree with the majority's constitutional analysis.

As to the specific applicability of Rule 404(b) to defense proffers, as Justice Dougherty observes, the plain language of this anti-propensity provision applies. And I agree with those courts observing that the functional analysis -- as between the competing approaches of applying Rule 404(b) on its terms or defaulting to a relevance and weighing analysis under Rules 401 and 403 as the majority favors here -- is largely the same (as long as some screening against pure propensity-based uses is employed in the latter approach). *See Ermin v. Scott*, 937 F.3d 1329, 1343 (11th Cir. 2019) (quoting *U.S. v. Sellers*, 906 F.2d 597, 604 n.11 (11th Cir. 1990)). I take this opportunity, in any event, to note that my own view aligns with those courts that do adhere to the Rule 404(b) framework. *See, e.g.*, *U.S. v. Williams*, 458 F.3d 312, 317 (3d Cir. 2006). *See generally* 3 JONES ON EVIDENCE §17:78 (7th ed. 2020).

In the present case, consistent with Justice Dougherty's analysis, the trial court specifically relied on salient considerations in excluding the evidence of the crimes that Appellant sought to attribute to Thompson. In this regard, the court explained that the attempt to introduce other-bad-acts evidence on Thompson's part was:

> not really a defense or contrary to the Commonwealth's theory of the case since the jury heard that Larry Thompson was also charged in this incident and the Commonwealth asserted that the Defendant and Mr. Thompson are both culpable by acting in concert with one another as co-conspirators and accomplices.

*Commonwealth v. Yale*, No. 1152-2017, *slip op.* at 7 (C.P. Luzerne Oct. 26, 2018). For this reason, and particularly in the absence of some fact or factor arising out of the prior-bad-acts evidence that would evince unilateral action on Thompson's part, the court found the evidence "would be too collateral, confusing, and distract the jury from the issues being considered in this trial." *Id.* at 9. Furthermore, Appellant was in no way precluded from presenting a defense, since he himself testified to a version of the events in which Thompson was portrayed as the sole perpetrator, despite the presence of an array of precursor materials and paraphernalia in Appellant's own bedroom. *See* N.T., Sept. 26, 2017, at 86-89.[2]

I would only add that the line of reasoning pursued by Appellant in seeking admission of Thompson's prior bad acts is plainly propensity-based, in that Appellant wished to posit to the jurors that Thompson's predisposition to manufacture methamphetamine using a particular method served as proof of his own innocence (or at least to cast a reasonable doubt on the Commonwealth's theory that he was complicit). Thus, I conclude that the Rule 404(b)(1) prohibition directly applied in the first instance.

This position is consistent with the decisions of several other courts that have considered the theory that a companion's convictions bear on a defendant's non-complicity. The following passage from the Third Circuit's decision in *Williams* -- which concerned whether a defendant's conviction of a firearms offense should be overturned

---

[2] Notably, Appellant's version of his encounter with police was materially inconsistent with the account of the testifying law enforcement officer. For example, the officer related that Appellant was found upstairs in his bedroom, where the items of paraphernalia were strewn about. *See* N.T., Sept. 26, 2017, at 26-27. Appellant, on the other hand, testified that he encountered police downstairs and "out to the back," and that, with regard to the paraphernalia items, Thompson had "shoved [them] into a closet." *Id.* at 87-89.

on account of a district court's decision to exclude evidence of a companion's previous conviction for such an offense -- is illustrative:

> Ultimately, [the companion's] prior conviction was only probative inasmuch as it showed that he had a propensity to carry a weapon -- the purpose proscribed by Rule 404(b). [The defendant/appellant's] protestations to the contrary are not persuasive. As we stated in *United States v. Morley*, 199 F.3d 129 (3d Cir. 1999), "a proponent's incantation of the proper uses of such evidence under the rule does not magically transform inadmissible evidence into admissible evidence." *Id.* at 133. He or she "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *Id.* (quoting *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994)). [The defendant/appellant] has not done that here. We therefore conclude that the District Court did not err in excluding evidence of [the companion's] conviction, as it was not admissible to show propensity and was not probative of identity or opportunity. *See* [*United States v.*] *Lucas*, 357 F.3d [599,] 606 [(6th Cir. 2004)] (holding that companion's prior conviction for possessing and selling cocaine was not admissible to show that defendant did not possess the cocaine in question because it showed propensity and was not probative of knowledge or intent); [*United States v.*] *Spencer*, 1 F.3d [742,] 745 [(9th Cir. 1992)] (holding that companion's prior bad act of "[h]iding a gun under a car seat is not a distinctive crime, and cannot be used to satisfy the 'identity' exception to Rule 404(b)").

*Williams*, 458 F.3d at 319; *accord Donald*, 316 P.3d at 268.

I take no issue with the notion that application of the Rule 404(b)(2) exceptions may be relaxed somewhat related to *non-propensity* applications of prior bad acts evidence proffered by criminal defendants. *See Williams*, 458 F.3d at 317. But in the present case, as related above and consistent with *Williams*, it seems clear to me that Appellant's proposed use of the evidence was, in fact, based on an asserted predisposition on Thompson's part.

To the degree that Appellant would claim the benefit of the Rule 404(b)(2) exception related to proof of identity, I agree with the trial court that the probative value to this effect was highly limited. In this regard, courts enforce a fairly high threshold of similarity to prove identity precisely because, absent such similarity, the evidence simply isn't probative of identity, and the only rational inference for the factfinder to make would be based on propensity. *See, e.g.*, *Williams*, 458 F.3d at 318. Again, moreover, in cases such as this one involving alleged complicity, the probative value of prior bad acts of asserted co-perpetrators relative to establishing "identity" is further diluted. For these reasons, even applying a relaxed similarity standard to an identity-based theory of admissibility, like the trial court, I find the similarity between Thompson's prior bad acts and the crimes with which Appellant was charged to be too generic to qualify under the exception. *Accord.* Dissenting Opinion, *slip op.* at 2-3 (Dougherty, J.).[3]

Based on the above, I discern no abuse of discretion on the part of the trial court and respectfully dissent.

Finally, I question the majority's approach of enlisting the trial court to render a new, after-the-fact, substitute, discretionary evidentiary ruling. *See* Majority Opinion, *slip op.* at 40. From my point of view, it would be more conventional and appropriate to remand to the Superior Court to assess whether the error discerned by the majority is harmless. Notably, the Commonwealth did raise harmless error in the brief that it presented to the Superior Court, and this alternative argument hasn't yet been

---

[3] If there is a difference between my analysis of the propriety of the trial court's ruling and that of Justice Dougherty, I might allow that the evidence of Thompson's other bad acts would pass a pure relevance test, because propensity or predisposition to commit similar crimes is in fact relevant, and the evidence could have provided a modicum of bolstering to Appellant's own account of the events. Thus, my emphasis here is more upon the import of the general rule disfavoring propensity-based uses of evidence, which is grounded upon a policy rationale.

addressed in light of the intermediate court's merits resolution and Appellant's more limited framing of the issue presented for appeal in this Court.

Justice Mundy joins this dissenting opinion.