[No. 26790-6-I.  Division One.  April 20, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANCIS R. GALLEGOS, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Peter Goldman, Deputy*, for respondent.

WEBSTER, A.C.J. — Francis R. Gallegos appeals his conviction of attempted second degree rape. He asserts that the information, which originally charged him with second degree rape, was constitutionally defective because it omitted the essential element of engaging in sexual intercourse with another person, and was not amended to charge him with attempted second degree rape until after the jury entered its verdict. Gallegos further asserts that the trial court erred in limiting his cross examination of the victim's husband, and in refusing his proposed instruction on voluntary intoxication. We affirm the conviction.

## FACTS

On the evening of November 8, 1989, the victim, T.G., and her friend, Dawn Karns, decided to go dancing. After eating a hamburger at McDonald's, they purchased orange juice and vodka and had a drink from the liquor they purchased. They then had a drink at the China Palace, where they stopped briefly, smoked marijuana, and went to a club at Pier 70. They stayed at Pier 70 until closing at about 1:30.

Upon leaving Pier 70, T.G. went with two men to their truck to look for Super Glue to fix her glasses. When T.G. met up with Karns, Karns was with Gallegos and another man whom T.G. did not know named Paxton Locke. The four agreed to go to Locke's apartment. They spent several hours listening to music, talking, and coloring on a poster. During that time, they finished the remainder of the orange juice and vodka and passed around a marijuana pipe.

Karns testified that neither she nor T.G. was impaired from drugs and alcohol, but that Gallegos was. She testified that he was "falling over" and spilling things, knocked down a bookcase, and broke a lamp. She also testified that he was making passes at her and probably also at T.G., but she did not think he was violent. Locke also testified that Gallegos was clumsy, knocked things over, and stumbled over his words.

T.G. told the group that she needed to go to a store to get Super Glue to fix her glasses so that she could drive home. Gallegos volunteered to go with her because he needed cigarettes. Neither Karns nor Locke wanted to go to the store. T.G. thought that Gallegos was intoxicated and acted obnoxious while they were at the apartment, but she was not afraid of him. T.G. and Gallegos walked to QFC, which was four or five blocks away from Locke's apartment. They purchased Super Glue, an apple, and cigarettes.

T.G. testified that on the way back from QFC, Gallegos grabbed her by the wrists, dragged her into the alley, and tried to rape her. She stated that she was on her feet when he first grabbed her, but slipped and fell to the ground when he jerked her wrists, so that he was dragging her feet first. She was screaming and trying to pull away. He told her to be quiet and put his hand over her mouth. After T.G. slipped, Gallegos straddled her and held her arms. She continued to scream, wrestle, and fight him. He pulled at her nylons and skirt, ripping her nylons. She recalled him unzipping his pants at some point during the attack. After someone from the apartment above yelled that she was going to call the police, Gallegos hesitated for a minute, and T.G. was able to free her hands and grab bricks in the wall bordering the alley. Gallegos grabbed T.G.'s ankles and tried to pull her further down the alley. Then he suddenly took off.

T.G. went to her car, which was parked in a lot nearby. She drove over to where Locke's apartment was, parked, and began honking her horn and screaming to get Karns's

attention. Her hands were cut, her elbows scratched, and there were blood spots on the back of her head. According to Karns, T.G. was hysterical and her nylons on one side were totally ripped.

The victim's husband testified that T.G. went out dancing with her friends or sister two or three times a year. After T.G. had returned home and told her husband what had happened, he drove with her to the alley, where he located her glasses (or a part of them) in the alley, and contacted a police officer in a nearby restaurant.

Gallegos was charged with second degree rape. On May 15, 1990, a jury found him guilty of the crime of *attempted* rape in the second degree. On August 1, 1990, the State filed an amended information charging Gallegos with the crime of attempted second degree rape.

## DISCUSSION

■ A challenge to the sufficiency of the charging document may be raised for the first time on appeal. *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991). However, when a challenge to the charging document is not made until after the verdict or on appeal, the reviewing court applies the following standard of review in favor of validity:

> (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?

*Kjorsvik*, at 105-06.

■■ The State cannot amend the charges made against a defendant once it has presented its case in chief, unless the amended charge is a lesser included offense of the crime charged in the information or a crime of a degree inferior to the one charged. *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987). *See* RCW 10.61.003, .006, .010. An attempted crime is a lesser included offense of the crime charged and the jury may convict a defendant of attempting to commit a crime charged, even though attempt was not specifically charged. RCW 10.61.010.

■ Gallegos asserts that since the second degree rape charge is defective, the attempted second degree rape charge is also defective. We agree that the information charging Gallegos with rape in the second degree was deficient because it did not allege that Gallegos engaged in sexual intercourse, which is a statutory element of second degree rape. RCW 9A.44.050(1)(a). However, the information alleged that Gallegos "by forcible compulsion did attempt to engage in sexual intercourse with another person, named [T.G.]". Since engaging in sexual intercourse is not an essential element of the crime of *attempted* second degree rape, of which Gallegos was convicted, the omission of that element cannot render the charge of attempted second degree rape defective.

■ Gallegos also contends that the original information was defective because it did not charge him with the crime of attempted second degree rape, and failed to allege that he intended to commit rape or took a substantial step toward committing rape. *See* RCW 9A.28.020. As previously noted, the information alleged that Gallegos "by forcible compulsion did attempt to engage in sexual intercourse with another person, named [T.G.]." Attempting to engage in sexual intercourse by forcible compulsion encompasses the elements of intent and a substantial step.

We conclude that the necessary facts appear in some form and by fair construction can be found in the charging document. Gallegos has not alleged that he was prejudiced by any of the alleged defects. *See Kjorsvik*, at 110. Thus, the information satisfied constitutional notice requirements.

■ Gallegos next asserts that the information failed to confer subject matter jurisdiction to the trial court. In *Kjorsvik*, the court declined to view charging document challenges as implicating subject matter jurisdiction. *Kjorsvik*, at 108. We therefore reject this argument.

We next address Gallegos's argument that the trial court erred in restricting cross examination of the victim's husband. During cross examination of the victim's husband, the following exchange occurred:

Q: Do you have an agreement between the two of you in your marriage with respect to your wife seeing other men?
A: No.
[THE PROSECUTOR]: I'll object.
THE COURT: Sustained.
Q: [Defense Counsel] Did your wife normally tell you, when she went out on an evening, who she was going out with?
[THE PROSECUTOR]: Objection, relevance.
THE COURT: Sustained.
Q: [Defense Counsel] Had you known your wife to go out dancing with someone besides friends from Safeco or her sisters?
[THE PROSECUTOR]: Objection, relevancy.
THE COURT: Sustained.

During a sidebar, Gallegos's counsel asserted that Gallegos was entitled to ask the victim's husband whether he objected to her associating with men she did not know, going to their apartments, or consuming drugs with them. Gallegos's counsel contended that these questions were necessary to determine whether the victim had a motive for fabricating either the entire incident or the severity of the incident. She argued that the State had elicited testimony from the victim's husband that he did not object to her going dancing with her friends or her sister, which had the effect of enhancing the victim's credibility, and that ascertaining whether the victim's husband approved or disapproved of T.G.'s conduct was essential to determining whether she had a motive to fabricate.

The court inquired whether there was any evidence of a consensual encounter. Gallegos's counsel replied that there was none, but that the evidence sought to be introduced should be admitted because it bore on the victim's credibility. The trial court then inquired whether there was any other evidence to permit the jury to infer that T.G. had fabricated the incident. Gallegos's counsel indicated that there was no further evidence. The trial court concluded that it was satisfied with its ruling.

■ A criminal defendant has a right to confront and cross-examine state witnesses. U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10); *State v. Hudlow*, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983). However, a criminal defendant has no

right to have irrelevant evidence admitted in his or her defense. *Hudlow*, at 15. Relevant evidence is that which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Evidence of sexual mores contrary to community standards is inadmissible for the general purpose of attacking a rape victim's credibility, and is admissible to prove the victim's consent only in limited circumstances. RCW 9A.44-.020(3); *see Hudlow*, at 8-9, 16-17.

Here, the court sustained the objection on relevance grounds and indicated during the sidebar that the area of inquiry was not appropriate under RCW 9A.44.020(3). We agree with the trial court that the testimony sought, standing alone, had little if any probative value on whether the victim was fabricating. Moreover, although the defense counsel did not have the purpose of attacking the victim's credibility with evidence of sexual mores contrary to community standards, permitting the defense counsel to ask the victim's husband about her past conduct and whether he approved of it could have had the prejudicial effect of suggesting some impropriety. We conclude that the trial court did not abuse its discretion in restricting the cross examination.

We next decide whether the trial court abused its discretion in refusing to give Gallegos's proposed instruction on intoxication, which stated:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state.

*See* WPIC 18.10. Evidence of intoxication and its effect on the defendant may be used to prove that the defendant was unable to form the particular mental state that is an essential element of a crime. RCW 9A.16.090; *State v. Coates*, 107 Wn.2d 882, 889, 735 P.2d 64 (1987). However, "[i]t is well settled that to secure an intoxication instruction in a criminal

case there must be substantial evidence of the effects of the alcohol on the defendant's mind or body." *Safeco Ins. Co. of Am. v. McGrath*, 63 Wn. App. 170, 179, 817 P.2d 861 (1991), *review denied*, 118 Wn.2d 1010 (1992). "Under RCW 9A.16-.090, it is not the fact of intoxication which is relevant, but the degree of intoxication and the effect it had on the defendant's ability to formulate the requisite mental state." *Coates*, at 891. Therefore, a criminal defendant is entitled to a voluntary intoxication instruction only if: (1) the crime charged has as an element a particular mental state,[1] (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected his or her ability to acquire the required mental state. *State v. Simmons*, 30 Wn. App. 432, 435, 635 P.2d 745 (1981), *review denied*, 97 Wn.2d 1007 (1982); *State v. Carter*, 31 Wn. App. 572, 575, 643 P.2d 916 (1982); *cf. State v. Stumpf*, 64 Wn. App. 522, 528, 827 P.2d 294 (1992) ("[t]o support a diminished capacity instruction, there must not only be substantial evidence of the mental disorder, but the evidence must also explain *the connection between* the disorder and the diminution of capacity").

Gallegos's counsel asserts that *State v. Rice*, 102 Wn.2d 120, 683 P.2d 199 (1984) dictates the outcome of this case. In *Rice*, the court considered whether the trial court committed prejudicial error in refusing to give an intoxication instruction. The mental state required to convict the defendants of second degree felony murder was intent to commit second degree assault. *Rice*, at 122, 124; *see* RCW 9A.32.050(1)(b); RCW 9A.36.021. The defendants testified that they had been drinking beer all day and had ingested between two and five Quaaludes each. They registered .06 and .10 on the Breathalyzer. One of the defendants had been struck by a car earlier that day, but "was so loaded he didn't feel it.' " *Rice*, at 123 (citing transcript). The court held that failure to give the defendants' proposed intoxication instruction was reversible

---

[1]In *Coates*, the court clarified that the defendant's intoxication cannot negate criminal negligence. *Coates*, at 892-93.

error. *Rice*, at 123. Although the court did not specifically conclude that the defendants had presented sufficient evidence that their intoxication affected their ability to acquire the requisite mental state, that conclusion is implicit in the court's holding.

Here, the mental state required to convict one of attempted second degree assault is intent to engage in sexual intercourse with another by forcible compulsion. *See* RCW 9A-.28.020; RCW 9A.44.050(1)(a). Although Karns and Locke testified that Gallegos had been drinking, and that the drinking made him lose his balance, spill things, and knock things over, there was no evidence presented that the drinking impaired Gallegos's ability to acquire the intent to engage in sexual intercourse with T.G. by forcible compulsion. Gallegos neither testified, nor offered expert testimony or other evidence indicating, that his drinking prevented him from acquiring the requisite intent or that he lacked awareness of his actions at the time of the incident in question. We therefore conclude that Gallegos was not entitled to the proposed voluntary intoxication instruction.

The judgment is affirmed.

SCHOLFIELD and PEKELIS, JJ., concur.

Review denied at 119 Wn.2d 1024 (1992).