# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2013 DEC -9 AH 10: 42

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68429-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| HAROLD CLAYTON DONALD, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 9, 2013 |
| | ) | |

LEACH, C.J. — As a matter of apparent first impression, we consider whether the exclusion of evidence of any person's other crimes, wrongs, or acts to show that he acted consistent with his character on a particular occasion, as required by ER 404(b), violates an accused's constitutional right to present a defense. Because ER 404(b) is neither arbitrary nor unreasonably related or disproportionate to the ends it is designed to serve, we reject the constitutional challenge to it.

Harold Donald appeals his convictions for first degree assault and attempted robbery. At trial, Donald argued that an accomplice, Lorenzo Leon, acting alone, committed the crimes. Donald contends that the trial court violated his constitutional right to present a defense by refusing to admit his proffered

evidence of Leon's criminal history and mental health to support this defense. For the first time on appeal, Donald also alleges an instructional error. Because the court did not abuse its discretion by excluding Donald's proffered propensity evidence or evidence of Leon's mental illness and because he did not preserve the alleged instructional error for review, we affirm.

## FACTS

Harold Donald and Lorenzo Leon assaulted Gordon McWhirter one night as McWhirter stepped outside his apartment to smoke a cigarette. A neighbor called 911. When police responded, they found McWhirter lying in the grass, naked and bloody. His injuries included a lacerated spleen, several fractured ribs and facial bones, a fractured toe, and a serious head wound. Police followed a blood trail back to McWhirter's vehicle, where they discovered that someone had broken into the vehicle and ripped out the ignition.

DNA (deoxyribonucleic acid) and fingerprint evidence connected both Donald and Leon to the attack. Donald denied knowing Leon and denied being in the area on the night of the attack. However, several of Donald's family and friends reported seeing the two men together on that day, and Donald's mother told police that Donald gave her a bathrobe matching the description of the one McWhirter had worn the night of the attack.

Leon pleaded guilty to one count of attempted robbery in the first degree. Although he agreed to testify against Donald, neither party offered his testimony at trial. The State tried Donald on charges of assault in the first degree, attempted robbery in the first degree, and possession of a stolen vehicle. Donald presented an alternate suspect defense, arguing that Leon alone committed the crimes. The court refused to allow Donald to present evidence of Leon's criminal history and limited the mental health history he sought to present to support this defense. Specifically, the court refused to allow evidence of Leon's prior convictions for violent crimes. It admitted some mental health evidence showing that Leon faked his mental illness but excluded evidence that Leon experienced "command hallucinations," in which a voice ordered him to hurt or kill people.

A jury convicted Donald of assault and attempted robbery. The court sentenced him to an exceptional sentence of 397 months, based partly on a rapid recidivism aggravator. Donald appeals.

## STANDARD OF REVIEW

The parties dispute the proper standard for review. Donald asserts that this court should review the evidentiary issues de novo because the court's challenged rulings denied Donald his constitutional right to present a defense. The State counters that we should apply an abuse of discretion standard because the proper application of the rules of evidence involves the trial court's

exercise of discretion. We do not resolve this dispute because the court did not err under either standard.

## DISCUSSION

Donald contends that the court erred by excluding evidence relevant to his "other suspect" defense. Specifically, Donald offered—and the trial court rejected—evidence of Leon's extensive criminal history of violent crimes. He asserts the jury could have concluded from Leon's propensity to commit violent crimes that he acted alone when he assaulted McWhirter. Donald acknowledges that ER 404(b) bans this pure propensity evidence but argues that this ban impermissibly impairs his Sixth Amendment right to present a defense. We disagree.

We begin our analysis with some general observations about character evidence. Character evidence might be considered relevant on four theories: (1) as circumstantial evidence that a person acted on a particular occasion consistently with his character, often called propensity evidence; (2) to prove an essential element of a crime, claim, or defense; (3) to show the effect that information about one person had on another person's state of mind; and (4) other purposes, such as identity or lack of accident.[1] Application of the rules for

---

[1] 3 CLIFFORD S. FISHMAN, JONES ON EVIDENCE: CIVIL AND CRIMINAL § 14:4 (7th ed. 1998).

character evidence depends in part upon the identity of the person the evidence relates to and his or her role in the lawsuit.

We next review the applicable Washington Rules of Evidence. ER 402 makes all relevant evidence admissible, unless a constitutional requirement, statute, rule, or regulation applicable in Washington State courts limits its admission. ER 401 defines "relevant evidence" as evidence having a tendency to make the existence of any fact consequential to the resolution of a lawsuit more or less probable than it would be without the evidence. ER 404 and ER 405 address the admissibility of character evidence for substantive purposes. ER 404 controls the admissibility of character evidence, and ER 405 controls the method of proving character when evidence of character is admissible. ER 608 and ER 609 address the admissibility of character evidence to impeach a witness. Here, we need to consider only the rules for character evidence offered for substantive purposes.

ER 404 provides,

### RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES

**(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) <u>Character of Accused</u>. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

(2) <u>Character of Victim</u>. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) <u>Character of Witness</u>. Evidence of the character of a witness, as provided in rules 607, 608, and 609.

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The plain language of ER 404(a) prohibits the use of character evidence to show circumstantially that a person acted on a particular occasion consistently with his character, with two exceptions that apply only in criminal cases. ER 404(a)(1) and (2) address character evidence of the defendant and the victim. Neither exception applies in this case. ER 404(a)(3) addresses character evidence relating to a witness by reference to ER 607, 608, and 609. Those three rules authorize only the admission of character evidence, in limited circumstances, to attack or support a witness's credibility. Thus, consistent with the general rule,[2] Washington courts reject the use of evidence of a witness's character to show that the witness acted consistently with that character on a particular occasion.

---

[2] 3 FISHMAN, § 14:1.

ER 404(b) addresses a specialized application of ER 404(a)'s general rule excluding circumstantial use of character evidence. ER 404(b) provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Consistent with ER 404(a)'s general rule, ER 404(b) excludes a specific category of evidence, any person's other crimes, wrongs, or acts, to prove that person's character to provide circumstantial evidence that he acted consistently with that character on a particular occasion. The second sentence of ER 404(b) preserves the admissibility of this evidence of earlier misconduct to prove other matters, including those described in the rule.

Thus, ER 404(b) expressly prohibits admission of Leon's criminal history to prove his character for the purpose of proving that Leon acted consistently with that history the day he assaulted McWhirter. Furthermore, if ER 404(b) does not apply, the general rule found in ER 404(a)'s first sentence prohibits the admission of any evidence of Leon's character for this purpose.

Donald first argues that his constitutional right to present a defense and the policy behind ER 404(b) should cause us to construe the plain language of ER 404(b) prohibiting propensity evidence inapplicable when a defendant offers

this evidence to support his defense.[3] Instead, the court should adopt a "straightforward relevance/prejudice analysis" to determine the admissibility of propensity evidence offered by a criminal defendant to prove a third party's conduct.[4] He contends that a majority of federal circuit courts have adopted this approach. Because ER 404(b) is substantially the same as Fed. R. Evid. 404(b) and no Washington case resolves the issue, Donald suggests that we should follow them. We disagree with his reading of his cited cases and find the approach adopted by the Ninth Circuit Court of Appeals persuasive.

In <u>United States v. McCourt</u>,[5] Kevin McCourt attempted to defend against charges of tax fraud with evidence of an alternate suspect's criminal history to show that someone else filed the fraudulent returns. The trial court sustained the government's Fed. R. Evid. 404(b) objection.[6] On appeal, McCourt argued that Rule 404(b) excluded only prior bad acts of the accused.[7] The Ninth Circuit disagreed, holding "that Rule 404(b) applies to 'other crimes, wrongs, or acts' of third parties."[8] The court explained,

---

[3] Donald's briefing does not address expressly the general prohibition contained in ER 404(a), but we assume that he intends his argument to apply to that rule as well.

[4] Donald, and a number of cases, label this evidence "reverse 404(b) evidence." We do not find this relabeling of propensity evidence helpful to our analysis. Therefore, we do not adopt it.

[5] 925 F.2d 1229, 1230, 1233 (9th Cir. 1991).

[6] <u>McCourt</u>, 925 F.2d at 1233.

[7] <u>McCourt</u>, 925 F.2d at 1230.

[8] <u>McCourt</u>, 925 F.2d at 1230.

As a whole, the rules on character evidence use explicit language in defining to whom they refer. Rule 404(a) . . . provides that evidence of "a person's" character is not admissible for the purpose of proving action in conformity therewith except for pertinent character traits of an "accused," a "victim," or a "witness." It therefore appears that Congress knew how to delineate subsets of "persons" when it wanted to, and that it intended "a person" and "an accused" to have different meanings when the Rules speak of one rather than the other. Because Rule 404(b) plainly proscribes other crimes evidence of "a person," it cannot reasonably be construed as extending only to "an accused."[9]

The court further explained that its interpretation of Rule 404(b) "is consistent with the scheme" of the rules on character evidence, which "specifically set out what character and misconduct evidence is admissible, and who may introduce it."[10] The court observed, "None of these rules permits evidence of prior bad acts when the sole purpose is to show propensity toward criminal conduct. The Rules therefore provide no basis for [the defendant's] proffered use of propensity evidence of a third party."[11]

The Sixth Circuit adopted a similar interpretation of rule 404(b) in <u>United States v. Lucas</u>,[12] where it also addressed the issue of applying a relevance/prejudice balancing test:

There is . . . some merit in considering the admissibility of such 404(b) evidence as depending on a straightforward balancing of the evidence's probative value under Rule 401 against Rule 403's

---

[9] <u>McCourt</u>, 925 F.2d at 1231-32 (citations omitted).
[10] <u>McCourt</u>, 925 F.2d at 1232; <u>see</u> FED. R. EVID. 404, 607, 608, 609.
[11] <u>McCourt</u>, 925 F.2d at 1232-33.
[12] 357 F.3d 599, 605 (6th Cir. 2004).

counteravailing considerations of "prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." . . . However, in assessing the probative value of such evidence we must also recall that the Advisory Committee Notes following Rule 401 explain that rules such as Rule 404 and those that follow it are meant to prohibit certain types of evidence that are otherwise clearly "relevant evidence," but that nevertheless create more prejudice and confusion than is justified by their probative value. In other words, we affirm that prior bad acts are generally not considered proof of any person's likelihood to commit bad acts in the future and that such evidence should demonstrate something more than propensity.

The Third Circuit also has adopted a similar approach. In <u>United States v. Williams</u>,[13] it explained its earlier holding in <u>United States v. Stevens</u>,[14] in which the court applied a relevance/prejudice balancing test. In <u>Williams</u>, the court emphasized that the evidence in <u>Stevens</u> was admissible for a proper rule 404(b) purpose—to show identity.[15] The Third Circuit stated, "This Court has never held that Rule 404(b)'s prohibition against propensity evidence is inapplicable where the evidence is offered by the defendant."[16] In <u>Williams</u>, the court held,

[W]e do not begin to balance the evidence's probative value under Rule 401 against Rule 403 considerations unless the evidence is offered under one of the Rule 404(b) exceptions. That the prohibition against propensity evidence applies regardless of by whom—and against whom—it is offered is evident from Rule 404(b)'s plain language.[17]

---

[13] 458 F.3d 312 (3d Cir. 2006).
[14] 935 F.2d 1380 (3d Cir. 1991).
[15] <u>Williams</u>, 458 F.3d at 317.
[16] <u>Williams</u>, 458 F.3d at 317.
[17] <u>Williams</u>, 458 F.3d at 317.

Donald argues that the Ninth Circuit wrongly decided McCourt and adopted a minority position among federal courts. Although Donald cites numerous federal cases to support his argument, none of them recognizes a constitutional right to admit propensity evidence. In United States v. Krezdorn,[18] the Fifth Circuit acknowledged, "Arguably, [evidence of extraneous offenses allegedly committed by a person other than the defendant] is not the kind of evidence to which Rule 404(b) applies." But the court concluded that it "need not decide, however, whether Rule 404(b) applies to this situation" because the evidence, which showed a common plan, was admissible "whether or not Rule 404(b) applies."[19]

The Second Circuit, in United States v. Aboumoussallem,[20] affirmed the exclusion of coconspirators' prior bad acts evidence under Fed. R. Evid. 403 but noted that the evidence could be admissible under rule 404(b) to prove a common plan or scheme. The court did recognize that "risks of prejudice are

---

[18] 639 F.2d 1327, 1332 (5th Cir. 1981).

[19] Krezdorn, 639 F.2d at 1333. More recently, in United States v. Reed, 715 F.2d 870, 872 (5th Cir. 1983), the State charged the defendants with conspiring to commit extortion against a man named Wolfe after Wolfe allegedly raped Burton. The defendants sought to introduce evidence of Wolfe's prior arrests for rape to impeach his assertion that Burton consented to have sex with him. The Fifth Circuit affirmed the district court's decision to exclude the evidence, in part on rule 404(b) grounds, reasoning, "Because the defendants' purpose in attempting to introduce such evidence was precisely what is forbidden under this rule." Reed, 715 F.2d at 876.

[20] 726 F.2d 906, 911-13 (2d Cir. 1984).

normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense."[21] But it made this statement in the context of examining evidence admissible under Fed. R. Evid. 404(b). It did not recognize any right of a defendant to the admission of propensity evidence contrary to 404(b)'s prohibition.

The First Circuit, in United States v. Gonzalez-Sanchez,[22] suggested, in dicta, that rule 404(b) "does not exclude evidence of prior crimes of persons other than the defendant" but affirmed the trial court's admission of the challenged evidence as relevant to the defendant's lack of knowledge. Donald also cites Glados, Inc. v. Reliance Insurance Co.,[23] in which the Eleventh Circuit applied the balancing test and admitted the proffered evidence to show motive and plan. More recently, the Seventh[24] and Tenth[25] Circuits relied on Stevens in balancing the evidence's probative value against the risk of prejudice, but these cases all involved evidence offered for one of the "other purposes" listed in ER

---

[21] Aboumoussallem, 726 F.2d at 911.

[22] 825 F.2d 572, 583 (1st Cir. 1987).

[23] 888 F.2d 1309, 1311 (11th Cir. 1987); see also United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989) (recognizing that rule 404(b) "is one of inclusion" that allows admitting evidence of other crimes, wrongs, or acts "unless it tends to prove only criminal propensity").

[24] United States v. Seals, 419 F.3d 600, 606-07 (7th Cir. 2005) (ultimately excluding proffered modus operandi evidence as irrelevant).

[25] United States v. Montelongo, 420 F.3d 1169, 1174 (10th Cir. 2005) (admitting the proffered evidence as relevant to the defendants' defense of lack of knowledge).

404(b).[26] None applies the "straightforward," pure balancing test that Donald advances.

None of the federal cases that Donald cites recognizes a criminal defendant's right to present third party propensity evidence to infer how the third party acted. Donald's reliance on federal case law fails.

Donald next argues that excluding his proffered propensity evidence unreasonably restricted his constitutional right to present a defense. He relies primarily upon four cases to support this argument, Washington v. Texas,[27] State v. Hudlow,[28] State v. Gallegos,[29] and State v. Hedge.[30] Because ER 404's prohibition on the admissibility of third party propensity evidence is neither arbitrary nor unreasonably related or disproportionate to the ends it is designed to serve, we reject Donald's constitutional challenge.

_____

[26] See also United States v. Alayeto, 628 F.3d 917, 921 (7th Cir. 2010) ("While admission of propensity evidence is generally prohibited, Rule 404(b) allows the introduction of an individual's other acts for a variety of other purposes." (citing United States v. Murray, 474 F.3d 938, 939 (7th Cir. 2007) (Although "[c]oncern with the poisonous effect on the jury of propensity evidence is minimal" when a defendant attempts to employ reverse 404(b) evidence, "unless the other crime and the present crime are sufficiently alike to make it likely that the same person committed both crimes, so that if the defendant did not commit the other crime he probably did not commit this one, the evidence will flunk."))). Murray, 474 F.3d at 939.
[27] 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).
[28] 99 Wn.2d 1, 659 P.2d 514 (1983).
[29] 65 Wn. App. 230, 828 P.2d 37 (1992).
[30] 297 Conn. 621, 1 A.3d 1051 (2010).

State courts have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.[31] However, a criminal defendant's constitutional right to "a meaningful opportunity to present a complete defense" limits this latitude.[32] An evidence rule abridges this right when it infringes upon a weighty interest of the defendant and is arbitrary or disproportionate to the purpose it was designed to serve.[33] But the defendant's right to present a defense also has limits. The defendant's right is subject to reasonable restrictions[34] and must yield to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."[35]

A brief review of five pertinent Supreme Court cases illustrates the application of these principles. Washington v. Texas involved a Texas law that barred a person charged as a participant in a crime from testifying on behalf of another alleged participant unless the witness had been acquitted.[36] The Court

---

[31] United States v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998).

[32] Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)).

[33] Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006).

[34] Scheffer, 523 U.S. at 308.

[35] State v. Finch, 137 Wn.2d 792, 825, 975 P.2d 967 (1999) (citing Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)).

[36] Washington, 388 U.S. at 16-17.

held that the law violated the Sixth Amendment because it arbitrarily excluded whole categories of defense witnesses from testifying, based upon a presumption they were unworthy of belief.[37] The Court characterized the law as absurd. It noted that the law left a witness free to testify when he has a great incentive to perjury but barred his testimony in situations where he has a lesser motive to lie.[38]

Chambers v. Mississippi[39] involved a Mississippi law prohibiting a party from impeaching its own witness and a state hearsay rule that did not include an exception for statements against penal interest. Chambers, charged with murder, unsuccessfully sought to treat as an adverse witness a person who repudiated an earlier sworn confession to the murder. These rules operated to exclude Chambers's cross-examination of the recanting witness and to exclude three witnesses who would have discredited the repudiation and demonstrated the witness's complicity.[40] The Court held that the application of the rules violated Chambers's due process rights but emphasized that its decision did not establish any new principle of constitutional law and that its holding did not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and

---

[37] Washington, 388 U.S. at 22-23.
[38] Washington, 388 U.S. at 22-23.
[39] 410 U.S. 284, 291-93, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).
[40] Chambers, 410 U.S. at 291-94.

procedures."[41] The Court noted that Mississippi had not attempted to defend or explain the underlying rationale for its "voucher rule."[42]

In Crane v. Kentucky,[43] the trial court prevented Crane from presenting evidence about the environment in which the police secured his confession because the court earlier had found the confession to be voluntary. Crane sought to introduce this evidence to cast doubt on his confession's credibility and validity.[44] The Supreme Court held that excluding this evidence denied Crane his fundamental constitutional right to a fair opportunity to present a defense.[45] The Court noted that neither the Kentucky Supreme Court nor the prosecution "advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence."[46] Finally, the Court cautioned, "[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted."[47]

---

[41] Chambers, 410 U.S. at 302-03.
[42] Chambers, 410 U.S. at 297.
[43] 476 U.S. 683, 685-86, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986).
[44] Crane, 476 U.S. at 686.
[45] Crane, 476 U.S. at 687.
[46] Crane, 476 U.S. at 691.
[47] Crane, 476 U.S. at 690.

Rock v. Arkansas[48] involved an Arkansas law that excluded all hypnotically refreshed testimony. As applied, this law prevented Rock, accused of a killing to which she was the only eyewitness, from testifying about certain relevant facts, some of which suggested the killing was accidental. The Court held that a per se rule excluding all posthypnosis testimony infringed impermissibly upon Rock's fundamental constitutional right to testify on her own behalf.[49] The Court stated that Arkansas could not exclude all criminal defendants' posthypnosis testimony in the absence of clear evidence repudiating the validity of all posthypnosis recollections.[50]

The last case, United States v. Scheffer,[51] involved a rule that made polygraph evidence inadmissible in court-martial proceedings. Scheffer, an Air Force airman, unsuccessfully sought to introduce polygraph test results to support his claim that he did not knowingly use drugs. Scheffer claimed that the exclusionary rule unconstitutionally abridged his constitutional right to present a defense.[52] The Court rejected this claim, holding the exclusion of all polygraph evidence "is a rational and proportional means of advancing the legitimate interest in barring unreliable evidence."[53]

---

[48] 483 U.S. 44, 56, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987).
[49] Rock, 483 U.S. at 62.
[50] Rock, 483 U.S. at 61.
[51] 523 U.S. 303, 305, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998).
[52] Scheffer, 523 U.S. at 305.
[53] Scheffer, 523 U.S. at 312.

The <u>Scheffer</u> Court began its analysis by noting that a defendant's right to present relevant evidence is subject to reasonable restrictions.[54] "State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules."[55] The Court stated that the challenged rule served legitimate interests in the criminal process. These interests include ensuring the reliability of evidence introduced at trial, preserving the fact finder's role in determining credibility, and avoiding litigation collateral to the primary purpose of the trial.[56]

The <u>Scheffer</u> Court distinguished <u>Rock</u>, <u>Washington</u>, and <u>Chambers</u> because "[t]he exclusions of evidence . . . declared unconstitutional in those cases significantly undermined fundamental elements of the defendant's defense."[57] In <u>Washington</u>, the Court noted, "'[T]he State arbitrarily denied [the defendant] the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed.'"[58] In <u>Rock</u>, the Court concluded, "[T]he rule [barring hypnotically refreshed recollection] deprived the jury of the testimony of the only witness who was at the

---

[54] <u>Scheffer</u>, 523 U.S. at 308.
[55] <u>Scheffer</u>, 523 U.S. at 309.
[56] <u>Scheffer</u>, 523 U.S. at 309.
[57] <u>Scheffer</u>, 523 U.S. at 315.
[58] <u>Scheffer</u>, 523 U.S. at 316 (second alteration in original) (quoting <u>Washington</u>, 388 U.S. at 23).

scene and had firsthand knowledge of the facts" and also infringed upon the "particularly significant" interest of the defendant "in testifying in her own defense."[59] The Court described Chambers as confined to the specific "'facts and circumstances' presented in that case."[60]

In contrast, Scheffer declared that the rule excluding polygraph evidence "does not implicate any significant interest of the accused."[61] At the court-martial, "the court members heard all the relevant details of the charged offense from the perspective of the accused."[62] Excluding polygraph evidence did not keep the defendant "from introducing any factual evidence" but prevented him only "from introducing expert opinion testimony to bolster his own credibility."[63]

Although not addressed in Scheffer, the exclusion of evidence in Crane also significantly undermined a fundamental element of Crane's defense. It denied Crane the opportunity to show why he confessed to a crime that he claimed he did not commit.

We find Scheffer most similar to this case. Excluding Leon's criminal history did not significantly undermine any fundamental element of Donald's defense. It did not exclude any witness with knowledge of any fact of the alleged

---

[59] Scheffer, 523 U.S. at 315.
[60] Scheffer, 523 U.S. at 316 (quoting Chambers, 410 U.S. at 303).
[61] Scheffer, 523 U.S. at 316-17.
[62] Scheffer, 523 U.S. at 317.
[63] Scheffer, 523 U.S. at 317.

crimes or any part of that witness's testimony. It did not exclude any testimony from Donald. He still could present all of the facts relevant to Leon's involvement in the assault upon McWhirter. ER 404(b) prevented him only from presenting propensity evidence the common law generally excludes because it is distracting, time-consuming, and likely to influence a fact finder far beyond its legitimate probative value.[64] Exclusion of propensity evidence furthers two goals that Scheffer recognized as reasonable. It ensures the reliability of evidence introduced at trial and avoids litigation collateral to the primary purpose of the trial. As with polygraph evidence in Scheffer, the per se exclusion of propensity evidence to prove how a person acted on a particular occasion is not disproportionate to the ends it is designed to serve.

Although not dispositive, we note that ER 404(b) reflects the general rule.[65] This strongly suggests that the Washington Supreme Court did not act arbitrarily when it adopted the rule. It also suggests that the rule is not disproportionate to the ends it is designed to serve.

Additionally, the evidence of Leon's criminal history that Donald proffered does not appear to be relevant. Donald offered this evidence to prove that Leon acted alone in the assault upon McWhirter. At oral argument, counsel agreed that the criminal history evidence offered by Donald described Leon's earlier

---

[64] 3 FISHMAN, § 14:1.
[65] 3 FISHMAN, § 14:1.

criminal convictions but did not indicate if he committed these crimes alone or with others. Evidence of Leon's participation in other crimes without information about the number of participants in them does not make the claim that Leon acted alone more or less likely. Therefore, it is not relevant to this claim.

The state cases cited by Donald do not dictate a different result. In State v. Hudlow, our Supreme Court affirmed the trial court's application of our State's rape shield statute[66] to exclude evidence of a rape victim's prior sexual behavior.[67] The Court identified two separate rights granted by the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution: (1) the right to present testimony in one's defense and (2) the right to confront and cross-examine adverse witnesses.[68] It recognized that these rights had limits and adopted a rule requiring that any limitation on a defendant's right to present relevant evidence be justified by a compelling state interest.[69] The Court concluded that the State had a compelling interest in preventing prejudice to the truth-finding process and encouraging victims to report and prosecute sex crimes to justify exclusion of minimally relevant evidence.[70] In dicta, the Court stated that no state interest can be compelling

---

[66] Former RCW 9.79.150 (1975), recodified as RCW 9A.44.020.
[67] Hudlow, 99 Wn.2d at 19.
[68] Hudlow, 99 Wn.2d at 14-15.
[69] Hudlow, 99 Wn.2d at 15-16.
[70] Hudlow, 99 Wn.2d at 16.

enough to justify exclusion of "evidence of high probative value."[71] Because Donald fails to show that propensity evidence is more than minimally relevant, the Hudlow dicta provides no support for his constitutional challenge.

State v. Gallegos[72] involves a straightforward application of Hudlow in a rape case. Similarly, it provides no support for Donald's position.

In State v. Hedge, Hedge unsuccessfully proffered evidence that a convicted drug offender had driven the vehicle Hedge was driving within 24 hours of Hedge's arrest and, on previous occasions, had left drugs and money in the vehicle.[73] The court adopted the construction of ER 404(b) urged by Donald, which we have rejected.[74] As an alternative basis for its decision, the court, without any analysis of the United States Supreme Court cases discussed above, held that the exclusion of Hedge's proffered evidence violated his Sixth Amendment right to present a defense.[75] We do not find this case persuasive.

Next, Donald contends that the court denied his right to present a defense when it excluded testimony that Leon experienced "command hallucinations" that ordered him to hurt other people. This evidence, Donald argues, was relevant to

---

[71] Hudlow, 99 Wn.2d at 16.
[72] Gallegos, 65 Wn. App. at 236-37.
[73] Hedge, 297 Conn. at 629.
[74] Hedge, 297 Conn. at 649-52.
[75] Hedge, 297 Conn. at 652-53.

-22-

show Leon had a motive to act alone. We hold that the court here did not err by excluding this evidence.

Donald's expert witness testified that Leon was malingering—faking a mental illness to escape punishment. The court admitted several jail phone calls between Leon and his mother discussing his plan to fake a mental illness. Donald wanted to argue, in the alternative, that Leon was either malingering or was actually mentally ill, but that either alternative showed that he assaulted McWhirter on his own. The court refused to admit expert witness testimony about Leon's "command hallucinations," fearing that it would lead to a minicompetency trial and create unnecessary confusion among the jurors.

We assume that evidence of Leon's mental illness meets the general ER 401 relevance standard; however, the court expressed a reasonable concern about the confusion of issues and possible delay. Further, the evidence already admitted gave Donald sufficient opportunity to present his alternate suspect defense. The parties dispute if the court properly balanced the relevance of the evidence with its prejudicial, confusing, or delaying effects. However, under the authorities discussed previously, excluding evidence for these reasons does not impermissibly impair Donald's right to present a defense because it did not significantly undermine any fundamental element of Donald's defense. Donald fails to show that the trial court abused its discretion in determining the evidence

to be confusing, unfairly prejudicial, or likely to produce unreasonable delay. He also fails to show that the evidence was more than minimally relevant.

Finally, Donald alleges that the court erred by instructing the jury, "If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty." Because the common law grants the jury the right to acquit even in the face of proof beyond a reasonable doubt, Donald claims that the jury should not have been told it had a "duty" to convict. Donald failed to object to this instruction below and does not demonstrate prejudice. Thus, under RAP 2.5, he failed to preserve the error for appeal. We decline to consider his request that we reverse our decision in State v. Meggyesy.[76]

## CONCLUSION

Because ER 404(b) is neither arbitrary nor unreasonably related or disproportionate to the ends it is designed to serve, we reject Donald's constitutional challenge to it. We reject his proposed construction of ER 404(b), which would exclude its application to evidence offered by a defendant. Further, the court did not abuse its discretion by excluding evidence of an alternative

---

[76] 90 Wn. App. 693, 958 P.2d 319 (1998).

suspect's mental health history and criminal history, and Donald failed to preserve his alleged instructional error for review.  Therefore, we affirm.

_Leach, C.J._

WE CONCUR:

_Verellen, J._

_Cox, J._