FILED
COURT OF APPEALS
DIVISION II

2015 JUL 28 AM 8: 24

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45782-2-II |
| Respondent, | |
| v. | |
| RANDY A. HUESKE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Randy Hueske appeals his convictions for theft in the second degree and identity theft in the first degree for depositing a forged check into his credit union account. He argues that the trial court violated his right to present a defense when it excluded evidence that he was not present when someone used his debit card to deposit a second forged check into his credit union account four days after the initial deposit, an incident for which he was not charged. Because the excluded evidence had only minimal relevance to Hueske's defense and its probative value was outweighed by the State's compelling interest in precluding the evidence to avoid confusing jurors with the unrelated transaction, the trial court did not violate Hueske's constitutional right to present a defense by excluding the evidence. Accordingly, we affirm.

## FACTS

On April 9, 2013, Hueske endorsed and deposited a forged check for $2,100 into his credit union account using an Automated Teller Machine (ATM). He immediately withdrew the maximum amount of cash available for withdrawal from his account. The ATM automatically video recorded the transaction. The video showed that Hueske, accompanied by Sarah Silva, accessed his account using his debit card, placed the forged check in a deposit envelope, put it in

the machine, and withdrew $380 cash.[1] Silva picked up the cash from the machine, counted it, and then handed a portion of it to Hueske.

The remainder of the funds became available for withdrawal two days later. On April 12, those funds were completely removed in two separate transactions, an in-person withdrawal at a credit union branch and a debit card purchase. The identity of the person conducting those two transactions is not known, but the branch withdrawal would have required identification and the debit card purchase would have required possession of Hueske's debit card.

The forged check was drawn on the joint-account of Carma Sonsteng and Sherry Duke. It was made payable to "Randy Hueske," and purportedly signed by "Sherry Duke." Report of Proceedings (RP) (Dec. 4, 2013) at 62, 76. The memo line of the check read "[f]ixing the Volvo." RP (Dec. 4, 2013) at 75. Duke did not know Hueske, and neither she nor Sonsteng owned a Volvo or had any reason to owe Hueske money.

On April 13, Silva attempted to deposit a second forged check from the Duke/Sonsteng account into Hueske's account using Hueske's debit card. ATM video footage showed Silva making the April 13 transaction. Hueske was not visible in the video.

The State charged Hueske with theft in the second degree and identity theft in the first degree for the April 9 incident. The State alleged that Hueske acted as either a principal or an accomplice. The State did not charge Hueske with any crime related to the April 13 transaction.

At trial, Hueske claimed he unknowingly participated in Silva's crimes. Hueske testified that he did not know that anything was amiss with the check when he deposited it in his account on April 9. According to Hueske, Silva gave him the check as payment for working on her car

---

[1] Credit union policy limits the amount of cash immediately available for withdrawal from a deposited check to $500, but Hueske's available balance was reduced to $381 because he had a negative account balance at the time he deposited the check.

and another car, and he did not look at the check before he endorsed it and deposited it in the ATM. Hueske explained that Silva accompanied him to deposit the check because he was medicated from surgery two and a half weeks earlier and he could not figure out how to use the ATM deposit envelope.

Hueske sought to introduce evidence regarding Silva's April 13 ATM transaction. Specifically, Hueske wanted to introduce evidence showing that Silva used Hueske's debit card during the April 13 transaction. The State objected on relevancy grounds, arguing that Silva's subsequent transaction and the fact that Silva had Hueske's debit card on April 13 were irrelevant because the charged crimes were completed prior to April 13. The forged check was deposited on April 9, and the deposited funds were withdrawn by April 12. The State further argued that references to the unrelated April 13 transaction would confuse jurors.

The trial court agreed with the State, concluding that Silva's April 13 transaction was not relevant to prove or disprove any matter within the jury's purview. The trial court excluded the ATM video and all evidence of the April 13 incident.

The jury found Hueske guilty as charged. Hueske appeals.

## ANALYSIS

I.   STANDARD OF REVIEW

We normally review a trial court's evidentiary ruling for an abuse of discretion. *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). But Hueske does not assign error to the trial court's application of the rules of evidence. Rather, Hueske argues that the trial court violated his constitutional right to present a defense by excluding evidence of the April 13 transaction. We review de novo claims that a defendant has been denied his constitutional right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

## II. TRIAL COURT RULING

Hueske argues that the trial court violated his constitutional right to present a defense by excluding evidence of the April 13 transaction. He claims that the excluded evidence supported his defense that he was an unknowing participant rather than an accomplice in the April 9 transaction. We disagree. At best, evidence of the April 13 transaction was only minimally relevant to Hueske's defense. Additionally, his need for the evidence did not outweigh the State's compelling interest to preclude the evidence to avoid juror confusion.

A criminal defendant has a constitutional right to question witnesses and offer evidence in his defense. *Jones*, 168 Wn.2d at 720. However, this right is limited by rules governing the admissibility of evidence. *State v. Donald*, 178 Wn. App. 250, 263-64, 316 P.3d 1081 (2013), *review denied*, 180 Wn.2d 1010 (2014). "Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence." *Jones*, 168 Wn.2d at 720 (emphasis in original). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevance depends on "the circumstances of each case and the relationship of the facts to the ultimate issue." *State v. Rice*, 48 Wn. App. 7, 12, 737 P.2d 726 (1987).

Even relevant evidence may be deemed inadmissible if the State can show a compelling interest in precluding it. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). The State's interest in precluding the evidence must "be balanced against the defendant's need for the information sought," and relevant information can be withheld only "if the State's interest outweighs the defendant's need." *Darden*, 145 Wn.2d at 622.

Hueske argues that the April 13 transaction was relevant to support his defense that he was an innocent victim rather than Silva's accomplice in the April 9 transaction. Hueske testified that he had accepted the forged check from Silva as payment for working on her car, and that he deposited it on April 9 it without noticing that the check was not drawn on Silva's account. Hueske's intent when he deposited the forged check into his account on April 9 is a fact that is of consequence to the determination of this action. But Silva's deposit of a second forged check into Hueske's account on April 13 does not make Hueske's culpability for the April 9 transaction more or less probable.

Hueske argues that the excluded evidence was relevant to show that only Silva knew that the checks were forged and that she took advantage of Hueske's lack of sophistication. But this evidence neither supports his theory nor makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Arguably, the fact that Silva possessed Hueske's debit card and could access his credit union account four days later makes it more probable that he acted in concert with Silva rather than merely existing as an innocent victim who deposited the forged check. Given the State's theory that Hueske acted as Silva's accomplice, evidence that Silva attempted to commit a similar crime a few days later does not tend to exculpate Hueske. Accordingly, the evidence that Hueske sought to admit was, at best, minimally relevant to his defense.

We next must determine whether Hueske's need for the information outweighed any compelling interest the State may have had by excluding the evidence. *See Darden*, 145 Wn.2d at 622. The State's interest in precluding evidence of the April 13 transaction was to avoid confusing the jurors about the unrelated transaction. The State's interest in seeking a fair trial by preventing evidence of little probative value from distracting the jurors can be sufficient to justify exclusion

of the evidence. *State v. Hudlow*, 99 Wn.2d 1, 14-16, 659 P.2d 514 (1983). And the State's interest is sufficient here. We hold that the State's interest in avoiding juror confusion outweighs Hueske's need for the minimally relevant evidence of the April 13 transaction. Therefore, the trial court did not violate Hueske's constitutional right to present a defense by excluding evidence of the April 13 transaction. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Lee, J.