# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 73590-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| SEAN MICHAEL CURRAN, | UNPUBLISHED OPINION |
| Appellant. | FILED: October 3, 2016 |

LEACH, J. — Sean Curran appeals his convictions for malicious mischief and felony harassment. He contends that the trial court violated his Sixth Amendment right to present a defense when it prevented him from testifying about key witnesses' plans to prostitute themselves. This excluded evidence is not relevant to any claimed motive to fabricate and would have unfairly prejudiced the jury against the witnesses. The trial court did not abuse its discretion in excluding the evidence. We affirm. Because the record includes no evidence showing Curran's current inability to pay, we deny his request that the State not receive an award of statutory costs.

## BACKGROUND

*Events Leading to Arrest*

The evening of March 26, 2014, defendant Sean Curran, Shelby Ostergard, and Viktoriya Tarasenko smoked methamphetamine together at Curran's home.

Ostergard left at some point that night and went home. Tarasenko stayed at Curran's house that night.

According to Ostergard, the next morning Tarasenko called Ostergard to ask her to return to the house. When Ostergard arrived, Tarasenko and Curran came out of the house. Ostergard testified that as Curran approached the car, he screamed that Ostergard was trespassing, he was going to call the cops, and he was going to kill her. Curran was carrying a bat. When he got to the car, he swung the bat, hitting the driver's side mirror, breaking it off, and shattering the glass. Ostergard testified that Curran then reached into the car through the driver's side window and slapped her face. She claimed that he said, "'I'm going to kill you if you call the cops.'" Ostergard drove off with Tarasenko in the car. She claims that Curran followed beside her in his truck, holding up a gun and threatening to kill her.

According to Curran, he awoke on the morning of March 27 to Ostergard pulling the screen windows off his house. He admitted to breaking her car mirror but denied that he slapped or threatened to kill her. Curran also denied that he chased her in his truck.

Tarasenko testified that Curran hit the car mirror with a baseball bat, threatened to kill Ostergard, and slapped Ostergard. She had no memory of Curran following them in his truck.

In the early hours of the next morning, around 1:00 a.m., Curran drove to Ostergard's house. He testified he went there to apologize for breaking the car

mirror. When Curran was outside her house, Ostergard called the police. The police arrived minutes later, finding Curran still outside Ostergard's house. Curran told the police he was there to apologize for damaging Ostergard's car. The police arrested Curran.

*Events at Trial*

The State charged Curran with felony harassment, assault in the fourth degree, and malicious mischief in the third degree. Before trial, the State asked the court to exclude certain evidence of some witnesses' character and prior bad acts. Specifically, the State moved to exclude Curran's claims that Ostergard had plans to engage in bank fraud and arrange for Tarasenko and herself to prostitute themselves to older men. Curran's attorney told the court that they did not intend to go into these issues. The court granted the State's exclusion request. During Curran's testimony, the trial court sustained objections to questions about Ostergard and Tarasenko's plans to do "things that they shouldn't be doing."

The jury found Curran guilty of malicious mischief and harassment. The jury could not reach a verdict on the assault charge. The trial court later dismissed that charge with prejudice. Curran appeals.

## ANALYSIS

*Excluded Evidence*

Curran contends that the trial court denied him his Sixth Amendment right to present a defense. This court reviews a trial court's decision to exclude

evidence for abuse of discretion.[1] "State courts have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."[2] While the Sixth Amendment grants a criminal defendant the right to present his defense,[3] this right extends only to "'relevant evidence that is not otherwise inadmissible.'"[4] "[A] criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense."[5]

"The threshold to admit relevant evidence is very low."[6] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[7] Relevant evidence may still be deemed inadmissible if the State can show the evidence is "so prejudicial as to disrupt the fairness of the fact-finding process at trial."[8] If the State establishes that the evidence would have a prejudicial effect, the prejudice from admission must be balanced against the defendant's need for the information sought.[9]

---

[1] State v. Atsbeha, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001).
[2] State v. Donald, 178 Wn. App. 250, 263, 316 P.3d 1081 (2013) (citing United States v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)), review denied, 180 Wn.2d 1010 (2014).
[3] Washington v. Texas, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).
[4] State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006) (quoting State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)).
[5] State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).
[6] State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).
[7] ER 401.
[8] Darden, 145 Wn.2d at 622.
[9] Darden, 145 Wn.2d at 622.

Here, the trial court did not abuse its discretion in excluding testimony related to Ostergard's prostitution plans because the testimony was not relevant to Curran's defense. Curran claims he was prevented from presenting evidence of the witnesses' motive to fabricate. Specifically, Curran contends that he was prevented from explaining that the witnesses fabricated their testimony because they were upset with him, presumably for thwarting their prostitution plans. But none of the stricken testimony addressed the witnesses' motivations. Thus, the excluded evidence did not have "any tendency" to make fabrication "more or less probable."[10]

Curran was precluded only from explaining his own motivations in connection with the malicious mischief charge. He testified that he was trying to help his friends by "keep[ing] them from going and doing things . . . they shouldn't be doing." He was unable to explain this statement fully because of the court's previous ruling on the State's request to exclude this evidence.

Curran appears to claim that he damaged Ostergard's car to prevent her from prostituting herself and Tarasenko. The trial court struck Curran's statement that Ostergard "was trying to get [Viktoriya] to go prostitute themselves." Curran attempted to offer this testimony to explain his statement that "the whole reason that [he] smashed her car was that her car is her weakness." Then, when asked why he seemed frustrated, Curran responded, "Trying to explain my actions without explaining my actions. I can't explain why I had took these actions that I

---

[10] See ER 403.

took. It's like why did you get mad, but don't tell me why you got mad; just why were you mad." Each of these statements references Curran's reasons for his own actions, but none of them show why any witness would fabricate testimony.

Even if Curran did not offer the excluded testimony to explain his own actions, it was not relevant to any witness's credibility. For instance, when defense counsel asked if Curran knew why Ostergard was hanging around older gentlemen, again referencing the alleged planned prostitution, the court sustained the State's objection, ruling that it called for speculation about someone else's mental state. Again, Curran does not explain how this or any of the excluded evidence shows a witness's motive to lie. Because the excluded evidence does not tend to make it more or less likely that the witnesses fabricated their testimony, it was not relevant to Curran's defense.

Curran claims that the stricken evidence was relevant because, in the State's rebuttal closing argument, it relied on the witnesses' motive to tell the truth. Yet still, Curran fails to explain how the excluded evidence shows the witnesses' motive to fabricate.

Excluding the evidence did not prevent Curran from challenging the witnesses' credibility. To the extent the stricken testimony bears on the witnesses' credibility, Curran presented alternative evidence on the issue. In State v. Donald,[11] this court concluded that the trial court did not abuse its discretion when

---

[11] 178 Wn. App. 250, 270-71, 316 P.3d 1081 (2013), review denied, 180 Wn.2d 1010 (2014).

excluding evidence with some relevance because the court had reasonable justification for its exclusion and the defendant had opportunity to present the defense through other means. Here, Curran was able to attack the witnesses' credibility through evidence of their drug use, which the court and deputy prosecutor acknowledged was relevant to credibility.

Even if Curran could show minimal relevance, the trial court was justified in excluding Curran's references to prostitution because of the prejudicial effect of that evidence. Courts can properly exclude evidence that has little or no probative value but could have significant prejudicial effect.[12] In State v. Gallegos,[13] a defendant charged with rape sought to examine the victim's husband about whether he approved or disapproved of her conduct and association with other men. The defendant asserted that the husband's views could show a motive for the victim to fabricate the entire incident or the severity of the incident.[14] This court concluded that the trial court did not abuse its discretion in restricting the cross-examination because the testimony "had little if any probative value on whether the victim was fabricating" and "could have had the prejudicial effect of suggesting some impropriety."[15] Similarly, here, the evidence Curran sought to introduce had little, if any, bearing on the witnesses' motive to fabricate. However, as was noted in the pretrial hearing, evidence of Ostergard's plans involving prostitution could

---

[12] ER 403; State v. Gallegos, 65 Wn. App. 230, 237, 828 P.2d 37 (1992).
[13] 65 Wn. App. 230, 236-37, 828 P.2d 37 (1992).
[14] Gallegos, 65 Wn. App. at 236-37.
[15] Gallegos, 65 Wn. App. at 237.

"smear" her character. As the excluded evidence was not relevant to whether Ostergard was telling the truth and merely tends to have the prejudicial effect of besmirching her character in the eyes of the jury, the trial court acted within its discretion in excluding it.

The trial court's decision to exclude the evidence was not arbitrary, nor did it "significantly undermine a fundamental element of [Curran's] defense."[16] Therefore, the trial court did not abuse its discretion in excluding evidence of the witnesses' prostitution plans or striking Curran's related testimony.

*Appellate Costs*

Curran asks that the court waive his appellate costs. RCW 10.73.160(1) vests the appellate court with broad discretion to grant or deny appellate costs.[17] RAP 14.2 permits the court to exercise that discretion in a decision terminating review. In exercising that discretion, ability to pay, although not the only relevant factor, is an important consideration.[18] "The appellate court will give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent."[19]

In this case, facts weigh both for and against imposing appellate costs. On the one hand, the trial court entered an order of indigency, waiving court costs and

_____

[16] Donald, 178 Wn. App. at 268.
[17] State v. Sinclair, 192 Wn. App. 380, 388, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).
[18] Sinclair, 192 Wn. App. at 389.
[19] RAP 15.2(f).

fees because Curran was not employed at the time. The trial court found that "the defendant lack[ed] sufficient funds to prosecute an appeal," and there was no subsequent finding that Curran's financial condition has improved or is likely to improve.[20] On the other hand, the order of indigency was signed ex parte, and thus, the State had no opportunity to present evidence showing Curran's ability to pay.[21]

As a whole, the record does not support a finding that Curran cannot currently or will not in the future be able to pay costs. In State v. Sinclair,[22] we found that awarding appellate costs was not appropriate because there was no "realistic possibility that [Sinclair would] be released from prison in a position to find gainful employment that [would] allow him to pay appellate costs." Sinclair was 66 years old with a minimum sentence of 280 months.[23] By contrast, Curran is relatively young at 31 years, he served only three months, and he has been released from custody.

Further, in Sinclair, the trial court appointed appellate counsel because Sinclair was "'unable by reason of poverty to pay for any of the expenses of appellate review.'"[24] Here, by contrast, the trial court justified waiver of expenses based on a finding that the defendant was unemployed. Curran provides no evidence that he is still unemployed or is unable to obtain employment. We

---

[20] Sinclair, 192 Wn. App. at 393.
[21] Sinclair, 192 Wn. App. at 393.
[22] 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).
[23] Sinclair, 192 Wn. App. at 393.
[24] Sinclair, 192 Wn. App. at 392.

therefore decline to conclude that Curran is presently unable to pay appellate costs.

## CONCLUSION

Because evidence about the witnesses' plans to prostitute themselves was not relevant to Curran's defense at trial, the trial court properly excluded that evidence. And because Curran provided no evidence that he is currently unable to pay appellate costs, we decline Curran's request to deny the State costs. We affirm.

*Leach, J.*

WE CONCUR:

*Mann, J.*

*Trickey, ACJ*